*Formatted for Electronic Distribution*                                    *For Publication*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

Filed & Entered
On Docket
July 20, 2018

---

**In re:**

**Robert Goodrich,**                               **Chapter 13**
      **Debtor.**                                  **Case # 17-10500**

---

*Appearances: Rebecca Rice, Esq.*                 *Heather Z. Cooper, Esq.*
            *Cohen & Rice*                        *Facey Goss & McPhee, P.C.*
            *Rutland, Vermont*                     *Rutland, Vermont*
            *For the Debtor*                       *For Jennifer Soutar*

            *Jan M. Sensenich, Esq.*
            *Office of the Chapter 13 Trustee*
            *Norwich, Vermont*
            *As the Standing Trustee*

---

### MEMORANDUM OF DECISION
### GRANTING MOTION FOR RECONSIDERATION OF THIS COURT'S INTERPRETATION OF § 362(c)(3)(A), DENYING MOTION TO ADOPT LIMITED INTERPRETATION OF THAT STATUTE, AND DEFERRING DETERMINATION OF WHETHER STAY HAS EXPIRED IN THIS CASE

Jennifer Soutar, a creditor in this case, filed a motion asking the Court to reconsider and change its interpretation of the scope of property the automatic stay covers when a debtor files a second bankruptcy case within a one-year period, and declare that the automatic stay was no longer in effect in this case. Ms. Soutar (the "Movant") urges the Court to apply the rationale of In re Bender, 562 B.R. 578 (Bankr. E.D.N.Y. 2016) (hereafter Bender), rather than follow the rationale it articulated in its prior decision, In re McFeeley, 362 B.R. 121 (Bankr. D. Vt. 2007) (hereafter, "McFeeley").

There is no dispute Robert Goodrich filed this chapter 13 bankruptcy case within one year of the date this Court dismissed his prior chapter 13 case. Since this is his second chapter 13 case within one year, Mr. Goodrich (the "Debtor") is subject to § 362(c)(3)(A) of the Bankruptcy Code,[1] under which the automatic stay generally available to debtors throughout the entire bankruptcy case may instead be limited to 30 days.

---

[1] In this memorandum, the Court refers to Title 11 of the United States Code as the Bankruptcy Code, and all statutory citations refer to the Bankruptcy Code, unless otherwise indicated.

After examining and reassessing the position this Court took in McFeeley, and considering the Supreme Court decisions interpreting BAPCPA provisions, and case law and scholarly articles addressing § 362(c)(3)(A), issued since McFeeley, the Court concludes there is cause to reconsider and change its position. Therefore, for the reasons set forth below, the Court grants the first request in the Movant's motion by reconsidering and changing the position it took in McFeeley.

The Court denies the Movant's second request, to adopt the interpretation of § 362(c)(3)(A) set out in Bender, and instead, adopts what is known as the "Minority Approach," holding that when a debtor files a second bankruptcy case within one year of his or her prior bankruptcy case being dismissed, the automatic stay terminates, in its entirety, 30 days after the filing of the second petition unless, within that initial 30-day period, the debtor or a party in interest proves the debtor filed the second bankruptcy case in good faith.

Since the Court is altering its position, upon which the Debtor reasonably relied, the 30-day period for the Debtor to establish he filed this case in good faith commences upon entry of this memorandum of decision. Therefore, the Court defers ruling on the Movant's request for a declaration as to whether the stay expired until after the Debtor has had an opportunity to exercise his rights during this period.

## I.  JURISDICTION

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered on June 22, 2012. The Court declares the Movant's requests for confirmation of stay termination and reconsideration of the Court's interpretation of § 362(c)(3)(A), and the Debtor's opposition to those requests, constitute a core proceeding for purposes of 28 U.S.C. § 157(b)(2)(A) & (G), over which this Court has constitutional authority to enter a final judgment.

## II.  LEGAL QUESTIONS PRESENTED

This contested matter presents four legal issues: First, has the Movant demonstrated cause for this Court to reconsider its interpretation of § 362(c)(3)(A), as set out in McFeeley? If so, what is the proper technique for interpreting a BAPCPA provision? Third, which interpretation of § 362(c)(3)(A) best aligns with the Supreme Court's guidance? Fourth, what impact do these determinations have on the Debtor in this case?

## III.  FACTUAL BACKGROUND

The relevant facts are not in dispute. On August 25, 2000, the Movant made a loan to the Debtor, secured by a mortgage on the Debtor's real property in Groton, Vermont, and the Debtor had not paid that loan as of the date he filed the instant bankruptcy case. See claim # 6-2. This is the third chapter 13 bankruptcy case the Debtor has filed in the past three years. The Debtor first filed a petition for relief

under chapter 13 of the Bankruptcy Code in June of 2015 (case # 15-10287); the Court dismissed that case, on the Movant's motion, on September 22, 2015. The Debtor filed his second chapter 13 bankruptcy petition (case # 15-11033) on November 6, 2015; the Court dismissed that case on August 25, 2017, after the Debtor failed to comply with the terms of a conditional order of dismissal. Following the dismissal of the second case, the Movant commenced a foreclosure action (doc. # 17).[2] On November 23, 2017, approximately three months after the Court dismissed his prior case, the Debtor filed the instant chapter 13 case (case # 17-10500).

On December 21, 2017, 31 days after the Debtor filed the instant bankruptcy case, the Movant requested an order confirming the automatic stay had expired (doc. # 13, the "Motion"). On January 5, 2018, the Debtor filed a response, acknowledging he had a chapter 13 case pending within the last year and that the automatic stay terminated by operation of law after 30 days, but only to the extent set forth in McFeeley, i.e. only as to acts against him or his property (doc. # 16, the "Response"). On January 11, 2018, the Movant filed a reply, asking the Court to declare the automatic stay does not apply to her claim, to change its interpretation of § 362(c)(3)(A) (the "Controlling Statute"), and to adopt the rationale of In re Bender, 562 B.R. 578 (Bankr. E.D.N.Y. 2016) in construing that statute (doc # 18, the "Reply").

After holding a hearing on the Motion on January 21, 2018, the Court entered a scheduling order (doc. # 19), granting the Debtor, Movant, and Chapter 13 Trustee (the "Parties") an opportunity to file memoranda of law addressing two legal issues: whether there was cause for this Court to reconsider the position it took in McFeeley, and if so, whether it should apply Bender in determining the extent to which the automatic stay is limited in this case. The scheduling order stated that if the Court modified its interpretation of the Controlling Statute, it would grant the Debtor a reasonable period of time to seek an extension of the stay and present evidence that he filed this case in good faith as to the Movant. The Parties filed the supplemental documents (doc. ## 23, 24, 25) and the Court then took the matter under advisement.

## IV.  DISCUSSION
### A.  Three Interpretations of § 362(c)(3)(A)

The Parties ask the Court to determine the scope of the stay in a second chapter 13 bankruptcy case filed within one year of the date the Court dismissed a prior chapter 13 case, after the second case has been pending 30 days.

Congress added § 362(c)(3)(A) to the Bankruptcy Code to address the extent of the stay in repeat

---

[2] All document references pertain to documents filed in case # 17-10500, which is the Debtor's current bankruptcy case.

filer cases as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No.

109-8 § 302 ("BAPCA"). In context, it reads as follows:

(c)     Except as provided in subsections (d), (e), (f), and (h) of this section--
  (1)     the stay of an act against property of the estate under subsection (a) of
          this section continues until such property is no longer property of the
          estate;
  (2)     the stay of any other act under subsection (a) of this section continues
          until the earliest of –
      (A)     the time the case is closed;
      (B)     the time the case is dismissed; or
      (C)     if the case is a case under chapter 7 of this title concerning an
              individual or a case under chapter 9, 11, 12, or 13 of this title,
              the time a discharge is granted or denied;
  (3)     if a single or joint case is filed by or against a debtor who is an
          individual in a case under chapter 7, 11, or 13, and if a single or joint
          case of the debtor was pending within the preceding 1-year period but
          was dismissed, other than a case refiled under a chapter other than
          chapter 7 after dismissal under section 707(b) –
      (A)     the stay under subsection (a) **with respect to any action taken**
              with respect to a debt or property securing such debt or with
              respect to any lease shall terminate **with respect to the debtor**
              on the 30th day after the filing of the later case;
      (B)     on the motion of a party in interest for continuation of the
              automatic stay and upon notice and a hearing, the court may
              extend the stay in particular cases as to any or all creditors
              (subject to such conditions or limitations as the court may then
              impose) after notice and a hearing completed before the
              expiration of the 30-day period only if the party in interest
              demonstrates that the filing of the later case is in good faith as to
              the creditors to be stayed. . .

§ 362(c) (emphases added).

The extent to which the automatic stay terminates – and what the remaining stay covers – under

the Controlling Statute "is one of many portions of BAPCPA which courts have struggled to decipher."

See Peter E. Meltzer, Won't You Stay a Little Longer? Rejecting the Majority Interpretation of

Bankruptcy Code § 362(c)(3)(A), 86 AM. BANKR. L.J. 407, 416 n. 26 (2012) (citing nine BAPCPA

passages in which courts have diverged in interpretation).[3] Among the "long string of incredibly poorly

drafted statutory provisions under the BAPCPA," In re Grydzuk, 353 B.R. 564, 567 (Bankr. N.D. Ind.

2006), the Controlling Statute has generated more than its share of consternation among bankruptcy

---

[3] Courts and analysts have been nearly unanimous in their criticism of BAPCPA's drafting and structure. See, e.g., In re Donald, 343 B.R. 524, 529 (Bankr. E.D.N.C. 2006) ("Deciphering this puzzle is like trying to solve a Rubik's Cube that arrived with a manufacturing defect."); In re Steinhaus, 349 B.R. 694, 706 (Bankr. D. Idaho 2006) ("[I]t appears unmistakable that Congress drafted, or allowed to be drafted by others and then enacted, provisions with 'loose' and imprecise language.").

judges attempting to interpret the extent of stay termination. Judge A. Thomas Small succinctly captured the interpretative challenges this provision presents:

> In an Act [BAPCPA] in which head-scratching opportunities abound for both attorneys and judges alike, § 362(c)(3)(A) stands out. It uses the amorphous phrase 'with respect to' a total of four times in short order and raises questions about the meaning of the words 'action taken' and 'to the debtor.' The language of the statute is susceptible to conflicting interpretations, and if read literally, would apply to virtually no cases at all. In sum, it's a puzzler.

In re Paschal, 337 B.R. 274, 277 (Bankr. E.D.N.C. 2006). The phrases Judge Small cites – 'action taken' and 'with respect to the debtor' – have split the courts and are the cutting edge of the dispute between the Parties in this case:

> (A)   the stay under subsection (a) with respect to any **action taken** with respect to a debt or property securing such debt or with respect to any lease shall terminate **with respect to the debtor** on the 30th day after the filing of the later case;

§ 362(c)(3) (emphases added).

There are three distinct, and dueling, interpretations of the Controlling Statute. One interpretation, which is generally referred to as the "Majority Approach," construes the Controlling Statute, and specifically the phrase "with respect to the debtor," to effect a termination of the stay only with respect to property of the debtor, and not with respect to property of the estate. In re Jumpp, 356 B.R. 789, 793 (1st Cir. B.A.P. 2006).[4] The Debtor and Trustee implore this Court to continue to implement that approach, as it did in McFeeley.

The second interpretation, known as the "Minority Approach," holds that the stay terminates in its entirety "as to a repeat-filing debtor, that debtor's property, and property of the debtor's estate, but not as to the debtor's spouse in a joint case if that spouse is not also a repeat filer." In re Smith, 573 B.R. 298, 301 (Bankr. D. Me. 2017).[5]

---

[4] Other cases in which the court adopted the Majority Approach include Witkowski v. Knight, 523 B.R. 291, 296–97 (1st Cir. B.A.P. 2014); In re Holcomb, 380 B.R. 813, 815–16 (10th Cir. B.A.P. 2008); In re Jumpp, 356 B.R. 789, 793–97 (1st Cir. B.A.P. 2006); In re Weil, 2013 U.S. Dist. LEXIS 60500 (D. Conn. 2013); In re Roach, 555 B.R. 840, 842–48 (Bankr. M.D. Ala. 2016); In re Hale, 535 B.R. 520, 527–28 (Bankr. E.D.N.Y. 2015); In re Rinard, 451 B.R. 12, 17–20 (Bankr. C.D. Cal. 2011); In re Dowden, 429 B.R. 894, 902–03 (Bankr. S.D. Ohio 2010); In re Tubman, 364 B.R. 574, 582-84 (Bankr. D. Md. 2007); In re Gillcrese, 346 B.R.373, 373-77 (Bankr. W.D. Pa. 2006); In re Brandon, 349 B.R. 130, 131-32 (Bankr. M.D.N.C. 2006); In re Harris, 342 B.R. 274, 276-280 (Bankr. N.D. Ohio 2006); In re Hollingsworth, 359 B.R. 813, 814 (Bankr. D. Utah 2006); In re Johnson, 335 B.R. 805, 806-07 (Bankr. W.D. Tenn. 2006); In re Jones, 339 B.R. 360, 363-65 (Bankr. E.D.N.C. 2006); In re Pope, 351 B.R. 14, 15-16 (Bankr. D.R.I. 2006); In re Rice, 392 B.R. 35, 38 (Bankr. W.D.N.Y. 2006); In re Williams, 346 B.R. 361, 368-70 (Bankr. E.D. Pa. 2006).

[5] Cases in which the court adopted the Minority Approach include In re Reswick, 446 B.R. 362, 365-73 (9th Cir. B.A.P. 2011); St. Anne's Credit Union v. Ackell, 490 B.R. 141, 143-45 (D. Mass. 2013); In re Smith, 573 B.R. 298, 304 (Bankr. D. Me. 2017), aff'd sub nom. Smith v. Maine Bureau of Revenue Servs., 2018 U.S. Dist. LEXIS 82211 (D. Me. 2018); In re Wilson, 2014 Bankr. LEXIS 194, *1 (Bankr. D. Conn. 2014); In re Furlong, 426 B.R. 303, 307 (Bankr. C.D. Ill. 2010); In re Daniel,

The third interpretation follows In re Bender, 562 B.R. 578 (Bankr. E.D.N.Y. 2016) (the "Bender Approach"), which the Movant asks the Court to adopt. It holds that, under the Controlling Statute, the stay terminates as to the debtor's property and property of the estate, but only if the property was the subject of a judicial, administrative, or other formal proceeding commenced prepetition. The courts following this approach interpret the term "action taken" in subparagraph (A) of 362(c)(3) to refer only to formal action a creditor took on its claim prior to the filing of the current case.[6]

### B. Has the Movant Demonstrated Cause for this Court to Reconsider Its Interpretation of § 362(c)(3)(A), As Set Out in McFeeley?

The Movant asks this Court to reconsider its interpretation of the Controlling Statute, in light of (i) the many rulings interpreting this statute that courts have issued in the 11 years since this Court construed it in McFeeley, and (ii) the intent of Congress in enacting the statute (doc. # 18).

The Supreme Court and the Second Circuit have emphasized, "[c]onsiderations of stare decisis weigh heavily in the area of statutory construction, where Congress is free to change [a] Court's interpretation of its legislation." General Dynamics Corp., Electric Boat Div. v. Benefits Review Bd., 565 F.2d 208, 212 (2d Cir. 1977) (quoting Illinois Brick Co. v. Illinois, 431 U.S. 720, 736 (1977)). However, "while stare decisis is undoubtedly of considerable importance to questions of statutory interpretation, the Supreme Court 'has never applied stare decisis mechanically to prohibit overruling … earlier decisions determining the meaning of statutes.'" Shi Liang Lin v. United States DOJ, 494 F.3d 296, 310 (2d Cir. 2007) (quoting Monell v. Dep't of Social Servs., 436 U.S. 658, 695 (1978)).

The Movant bears the burden in "advocating for the abandonment of an established precedent[,]" which "is greater where the Court is asked to overrule a point of statutory construction." Patterson v. McLean Credit Union, 491 U.S. 164, 172 (1989). To persuade the Court to modify the interpretation it articulated in McFeeley, the Movant must demonstrate that continuing the present interpretation will "lead[] to an irrational result or [] is founded upon implausible inferences as to congressional intent." United States v. Aguon, 851 F.2d 1158, 1178 (9th Cir. 1988) (Wallace, J. dissenting) (citing Busic v. United States, 446 U.S. 398, 404 (1980)).

As the Trustee states, the approach enunciated in McFeeley has been the controlling interpretation in this district and, "[f]or eleven years[,] ... has provided clarity and consistency as to the scope of the

---

404 B.R. 318, 321-26 (Bankr. N.D. Ill. 2009); In re Johns, No. 08-24311, at 3 (Bankr. E.D. Wis. July 11, 2008); In re Curry, 362 B.R. 394, 398-402 (Bankr. N.D. Ill. 2007); In re Jupiter, 344 B.R. 754, 757-62 (Bankr. D.S.C. 2006).
[6] This approach pre-dates the Bender decision. See In re Curry, 362 B.R. 394, 400 (Bankr. N.D. Ill. 2007); In re Paschal, 337 B.R. 274, 280 (Bankr. E.D.N.C. 2006) (finding that, under the Controlling Statute, a creditor must have taken a formal action prior to the filing of the debtor's second bankruptcy petition to obtain stay relief, but reserving any decision on the meaning of the term 'with respect to the debtor.'")

6

automatic stay in cases where a second case is filed within one year" (doc. # 25, p. 2). He is also correct that "[t]here have been no contrary controlling decisions from the Second Circuit" requiring a change in this Court's position (doc. # 25, p. 1). "Overruling precedent is never a small matter," Kimble v. Marvel Entm't, LLC, 135 S. Ct. 2401, 2409 (2015), and this Court does not contemplate modifying its position lightly. See Janus v. Am. Fed'n of State, Cty., and Mun. Emp. Council 31, No. 16-1466, slip op. at 34 (U.S. June 27, 2018) ("We will not overturn a past decision unless there are strong grounds for doing so."). Moreover, the concerns the Debtor expresses, namely that a departure from the longstanding and familiar McFeeley interpretation may cause "potentially massive uncertainty" (doc. # 23, p. 8), have merit. The Court is mindful of the consequences a change in precedential jurisprudence may bring, and weighs carefully the value of adopting what it views as a more legally sound interpretation against the impact of changing a well-established precedent, on an issue crucial to both debtors and creditors. It also recognizes that while consistency and stare decisis are "important to the rule of law, [] so are correct judicial decisions." Kimble, 135 S. Ct. at 2417 (Alito, J., dissenting). "It is more important that the court should be right upon later and more elaborate consideration of the cases than consistent with previous declarations." Barden v. Northern Pacific R. Co., 154 U.S. 288, 322 (1894); see also Janus, slip op. at 34 ("But as we have often recognized, stare decisis is 'not an inexorable command.'") (internal citations omitted).

This Court decided McFeeley in early 2007, less than two years after the effective date of BAPCPA. Since McFeeley, it has the benefit of its additional experience with the impact of the BAPCPA revisions to the Code, developing bankruptcy court jurisprudence with respect to the Controlling Statute, and Supreme Court guidance on how to interpret BAPCPA provisions.

This Court finds cause to grant the Movant's request to reconsider its position on two grounds. First, the Supreme Court has issued several decisions interpreting unrelated BAPCPA provisions, which, while not directly on point, are instructive with regard to statutory construction of BAPCPA. See infra Part IV(C). These decisions, unavailable in 2007 when the Court issued McFeeley, provide guideposts for analyzing the Controlling Statute. Second, based upon the well-reasoned and sharply conflicting perspectives other courts have articulated, and the thoughtful and wide-ranging interpretations scholars have published, regarding BAPCPA in general and the Controlling Statute in particular, there is ample new thinking on the question to warrant this Court taking a fresh look at the decision it issued eleven years ago. See In re Smith, 573 B.R. 298, 299 (Bankr. D. Me. 2017) (collecting cases emblematic of the developing jurisprudence with respect to the Controlling Statute). After considering the Supreme Court guidance and scrutinizing the decisions issued since McFeeley, this Court concludes it is appropriate for it

to reassess whether the rationale it applied in McFeeley "may [have] produce[d] a result at odds with the intention of the drafters," In re Jupiter, 344 B.R. 754, 761 (Bankr. D. S.C. 2006), or was founded "upon implausible inferences as to congressional intent." Busic v. United States, 446 U.S. 398, 404 (1980).

Accordingly, the Court grants the Movant's first prayer for relief and reconsiders its position on the proper interpretation of §362(c)(3)(A).

### C. Supreme Court Guidance for Interpreting BAPCPA Provisions

While it did not address § 362(c)(3)(A) in particular, in the years following McFeeley, the Supreme Court interpreted other provisions of BAPCPA in four cases (hereafter the "BAPCPA Cases").[7] "There is no one theory or process or method that can be teased out of the corpus of Supreme Court [bankruptcy] opinions that will neatly explain them[,]" but the Supreme Court's statutory analysis of the BAPCPA Cases serves as crucial guidance for how this Court should interpret the Controlling Statute. Lee Dembart and Bruce A. Markell, Alive at 25? A Short Review of the Supreme Court's Bankruptcy Jurisprudence, 1979 – 2004, 78 AM. BANKR. L.J. 373, 386 (2004).

In the BAPCPA Cases, the Court continued its practice of employing a "plain meaning" approach to statutory interpretation which, as Circuit Judge Rendell described, "often can be difficult to apply, and … anything but plain." Marjorie O. Rendell, 2003 – A Year of Discovery: Cybergenics and Plain Meaning in Bankruptcy Cases, 49 VILL. L. REV. 887, 887 (2004). The Court frequently begins with an examination of statutory or dictionary definitions, but these tools may be of limited utility where a given statute is missing a critical definition, or where competing dictionaries yield contrasting definitions.[8] As a result, the Court often extends its approach beyond the text of the provision in question to examine related provisions within the same statute, as well as the broader statutory scheme as a whole. Rendell, supra, at 888–89. See also Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000) (considering the statute's "contextual features"). "Statutory construction … is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme …" United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., 484 U.S. 365, 371 (1988).

In the BAPCPA Cases, the Supreme Court began its consideration "with the language of the statute itself," see Ransom v. FIA Card Servs., N.A., 562 U.S. 61, 69 (2011), and considered statutory

---

[7] See Hall v. United States, 566 U.S. 506 (2012); Ransom v. FIA Card Servs., N.A., 562 U.S. 61 (2011); Hamilton v. Lanning, 560 U.S. 505 (2010); Milavetz, Gallop & Milavetz, P.A. v. United States, 559 U.S. 229 (2010).

[8] See Clark Cunningham, et. al., Plain Meaning and Hard Cases, 103 YALE L.J. 1561, 1563 (1994) (citing National Org. of Women, Inc. v. Scheidler, 114 S. Ct. 798 (1994)) (noting a case in which "leading dictionaries have definitions that differ exactly as the parties differ over the meaning of the statutory term, and thus provide no objective way of resolving that dispute over ordinary language meaning.")

definitions as well as dictionary definitions in determining meaning. See Milavetz, Gallop & Milavetz, P.A. v. United States, 559 U.S. 229, 236, 240 (2010); Hamilton v. Lanning, 560 U.S. 505, 513–14 (2010); Ransom, 562 U.S. at 69–70; Hall v. United States, 566 U.S. 506, 511–12 (2012).

The Court did not limit its analysis to the words of the salient BAPCPA provision in these cases. Instead, the Court expanded its consideration to include related provisions, both preceding, and originating within, BAPCPA. Examples in each case demonstrate this approach. In Milavetz, the Court compared the definition of "debt relief agency" in §101(12A) to §§ 526(d) and 527(b) of the Bankruptcy Code in determining whether the term included attorneys. See 559 U.S. at 235–38. In analyzing the meaning of "projected" in § 1325(b)(1)(B) in Lanning, the Court examined competing interpretations within the larger context of § 1325 as a whole, and through comparison to analogous provisions outside of chapter 12, such as § 1129(a)(15)(B), in order to identify potential conflicts. See 560 U.S. at 517–20. In Ransom, the Court compared the contested phrase "applicable" in § 707(b)(2)(A)(ii)(I) to related provisions defining and determining "disposable income" and "amounts reasonably necessary" in §§ 1325(b)(2) and (3). See 562 U.S. at 70. In Hall, the Court compared the provision at issue, § 1222(a)(2), to other BAPCPA amendments addressing connections between the Bankruptcy Code and the Internal Revenue Code, looked for guidance in the textually similar § 1322(a)(2), and considered the impact a given reading would have upon longstanding interpretations of chapter 13 provisions. See 566 U.S. at 515–19.

The Court also considered whether interpretations would render language superfluous, either in the statute at issue or in other Bankruptcy Code provisions. See, e.g., Hamilton v. Lanning, 560 U.S. 505, 526 (2010) (finding the mechanical approach "effectively reads [a] phrase out of the statute" in certain circumstances); Ransom v. FIA Card Servs., N.A., 562 U.S. 61, 74 (2011) (finding one interpretation "would render the term 'applicable' superfluous"); Hall v. United States, 566 U.S. 506, 517 (2012) (expressing a concern of rendering § 1305 "inoperative or superfluous"). While the BAPCPA Cases demonstrate the Court's continued proclivity to "sh[y] away from other, nontextual approaches to statutory interpretation" such as legislative history, see Dembart & Markell, supra at 386, the Court nevertheless considered extratextual sources, such as related provisions and statutory context to determine meaning. See Milavetz, Gallop & Milavetz, P.A. v. United States, 559 U.S. 229, 244–45 (2010); Ransom, 562 U.S. at 78; Lanning, 560 U.S. at 520; Hall 566 U.S. at 513–19.

In these cases, the Court also continued its commitment to "avoid the pitfalls that plague too quick a turn to the more controversial realm of legislative history." Lamie v. United States Trustee, 540 U.S. 526, 536 (2004). In Milavetz, the Court remarked in a footnote that, "[a]lthough reliance on legislative

history is unnecessary in light of the statute's unambiguous language, we note the support that record provides for the Government's reading [of the statute in question]." Milavetz, 559 U.S. at 236 n. 3. In Hall, the Court remarked in a footnote, "[f]or those of us for whom it is relevant, the legislative history confirms that Congress viewed § 346 as defining which estates were separate taxable entities." Hall, 566 U.S. at 514 n. 3 (2012). Both Milavetz and Hall utilize legislative history as additional, though not required, support for the Court's chosen interpretation.[9]

Most importantly, the BAPCPA Cases establish that the Court's plain meaning approach includes both a general skepticism of legislative history and a general deference to congressional purpose. Though the Court assiduously avoided finding the BAPCPA provision in each of these cases was ambiguous, thereby eliminating the obligation to consider legislative history, see Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 737 (1985), it expressly pointed to the congressional intent behind two of the subject BAPCPA provisions.[10] At the outset, Milavetz finds Congress enacted BAPCPA "to correct perceived abuses of the bankruptcy system[,]" which included "provisions that regulate the conduct of 'debt relief agencies[.]'" Milavetz, Gallop & Milavetz, P.A. v. United States, 559 U.S. 229, 231–32 (2010). To support this finding, the Court looked to pre-BAPCPA and BAPCPA provisions as evidence of Congress's concern with the "loading up of debt" prior to filing bankruptcy and, thus, its intention in passing the provision at issue. Id. at 244.[11] In Ransom, the Court actually cited the 2005 House Judiciary Report as evidence of Congress's intention to "ensure that [debtors] repay creditors the maximum they can afford," even without finding the BAPCPA provision ambiguous. Ransom v. FIA Card Servs., N.A., 562 U.S. 61, 64, 71 (2011) (citing H.R. Rep. No. 19-31, pt. 1, p. 2 (2005)).

---

[9] In Milavetz, the Court also provided guidance as to the extent of its review of legislative history, if and when it found a BAPCPA provision ambiguous. It stated that in future instances of ambiguous BAPCPA provisions, its review would be broad, including committee reports accompanying the earlier iterations of the bill that would eventually become BAPCPA in 2005. See Milavetz, 559 U.S. 229, 236 n. 3 (2010). The Court cited the 2005 House Judiciary Report and the 1998 House Committee on the Judiciary Hearings, finding that, "[w]hile the 1998 Hearings preceded the BAPCPA's enactment by several years, they form part of the record cited by the 2005 House Report." Id. In a case decided after Milavetz, the Second Circuit similarly cited to the same 2005 House Judiciary Report and the 1998 Judiciary Hearings as evidence of the "backdrop" against which Congress enacted BAPCPA. See Conn. Bar Ass'n v. United States, 620 F.3d 81, 96–97 (2d Cir. 2010).

[10] A plain meaning approach does consider congressional purpose, even in the absence of direct reliance on legislative history. See John F. Manning, The Absurdity Doctrine, 116 HARV. L. REV. 2387, 2408 n. 75 (2003) ("To exclude legislative history … is not to deny the potential utility of purpose. Few would deny the possibility of gleaning a statute's overall purpose from its structure or from the aims suggested by the text itself.").

[11] In efforts to decipher the meaning of newly added provisions, three of the four BAPCPA decisions considered pre-BAPCPA bankruptcy statutes and practice. See Milavetz, 559 U.S. at 244; Lanning, 560 U.S. at 515–17; Hall 566 U.S. at 513–14. The Court did not need to consider pre-BAPCPA practice in Ransom because it found the provision in question, § 707(b)(2)(A)(ii)(I), "eliminate[ed] the pre-BAPCPA case-by-case adjudication of above-median-income debtors' expenses[.]" 562 U.S. at 78.

In the not infrequent instances in which competing interpretations of BAPCPA provisions produced "anomalies," the Court adopted the interpretation that more faithfully complied with congressional intent. See Ransom, 562 U.S. at 78. In Milavetz, the Court rejected the interpretation that it found "serve[d] none of the purposes of the Bankruptcy Code or the amendments enacted through the BAPCPA[,]" and observed, "no other solutions yield[ed] as sensible a result" as the reading the Court adopted. Milavetz, 559 U.S. at 245. In Ransom, the Court acknowledged that each interpretation produced "anomalies," but defended its position by observing "the policy concerns Ransom emphasizes pale beside one his reading creates: His interpretation … would frustrate BAPCPA's core purpose of ensuring that debtors devote their full disposable income to repaying creditors." Ransom, 562 U.S. at 78.

Even when it does not find a statutory provision ambiguous, the Supreme Court regularly considers whether an interpretation produces an objectively absurd result, and may consult congressional purpose, including legislative history, in doing so. See Brett M. Kavanaugh, Fixing Statutory Interpretation, 129 HARV. L. REV. 2118, 2157 (2016) ("Interestingly, in determining whether a statute produces an absurd result, even Justice Scalia agreed that judges may look to legislative history.") (citing ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 388 (2012)). In the BAPCPA Cases, the Court examined whether an interpretation might produce "absurdities" or "senseless results" not intended by Congress. In Milavetz, the Court found that one proponent's "expansive view … would produce absurd results." Milavetz, Gallop & Milavetz, P.A. v. United States, 559 U.S. 229, 245–46 (2010). In Lanning, the Court pronounced that its holding would avoid the "senseless result[] that we do not think Congress intended" of "deny[ing] creditors payments that the debtor could easily make." Hamilton v. Lanning, 560 U.S. 505, 520–21 (2010); see also Baud v. Carroll, 634 F.3d 327, 353 (6th Cir. 2011). The Ransom Court reemphasized this point, declaring its interpretation did not produce "senseless results" and comported with BAPCPA's "core purpose of ensuring that debtors devote their full disposable income to repaying creditors." Ransom v. FIA Card Servs., N.A., 562 U.S. 61, 64, 78 (2011). In Hall, the Court found that conflicting legislative history was insufficient to support an interpretation contrary to the statute's "plain language, context and structure," especially where such an interpretation would "upset[] the background norms in both Chapters 12 and 13" and "threaten[] ripple effects beyond [the] individual case for debtors in Chapter 13 and the broader bankruptcy scheme[.]" Hall v. United States, 566 U.S. 506, 523 (2012).

The BAPCPA Cases provide instructions that can be followed by reference to three guideposts: First, courts should apply the language as written where the definitions, context, and structure support a single, plain meaning. With the notable exception of Ransom, the Court looked to legislative history only to bolster its plain meaning interpretation. See Milavetz, 559 U.S. at 236 n. 3; Hall, 566 U.S. at 514 n. 3;

but see Ransom, 562 U.S. at 71. Second, courts should be mindful of congressional purpose when weighing competing interpretations, and consider whether a particular reading of the statute will produce "absurdities" or "senseless results" not intended by Congress. Milavetz, 559 U.S. at 245–46; Lanning, 560 U.S. at 520–21; Ransom, 562 U.S at 78. Third, when congressional purpose is not apparent from the statute itself, or related provisions, courts are well advised to refer to the 2005 House Judiciary Report to discern the core purpose of a BAPCPA provision. Ransom, 562 U.S. at 71. This Court will embark on the interpretive quest to construe the scope and impact of § 362(c)(3)(A), following these three guideposts.

### D. Does the Majority or Minority Approach More Closely Follow the Supreme Court's Guidance in Interpreting BAPCPA Provisions?

#### (1) THE TEXT OF § 362(c)(3)(A)

This Court begins its statutory analysis with the premise that it should adopt the approach that gives the most effective meaning possible to the actual words of the Controlling Statute. Unfortunately, adhering to this premise is a challenge since the language of the Controlling Statute has generated several conflicting interpretations. It reads:

> (A)   the stay under subsection (a) with respect to any **action taken** with respect to a debt or property securing such debt or with respect to any lease shall terminate **with respect to the debtor** on the 30th day after the filing of the later case;

§ 362(c)(3) (emphases added).

The Majority Approach relies on the plain language of the phrase "with respect to the debtor" to conclude the stay terminates only with respect to the debtor and the debtor's property, and not property of the estate. See, e.g., In re Holcomb, 380 B.R. 813, 815–16 (10th Cir. B.A.P. 2008); In re Jumpp, 356 B.R. 789, 796 (1st Cir. B.A.P. 2006). While courts adopting the Majority Approach may find the language "entirely plain," In re Jones, 339 B.R. 360, 363 (Bankr. E.D.N.C. 2006), the phrase "with respect to the debtor" is open to at least three additional readings beyond the "plain meaning" those courts assign to it.

The first of these readings is the "simplest explanation:" the stay terminates "both as to the debtor and the debtor's property (estate and non-estate) and so would allow 'any action' against property securing a debt to proceed." In re Daniel, 404 B.R. 318, 324 (Bankr. N.D. Ill. 2009). This interpretation would make no distinction between a debtor and co-debtor regarding the impact of stay termination. Id. Additionally, it renders the term "with respect to the debtor" superfluous as "[t]here is no need to emphasize that termination of the stay under § 362(c)(3)(A) applies in the debtors' case, since, after all, that is the only case to which it could apply." Id. at 325. Perhaps due to this superfluity, there do not appear to be any jurisdictions that have read the statute in this way.

A second possible reading is that the phrase "means nothing at all; it is adscititious, the result of sloppy draftsmanship which permeates all of BAPCPA." Meltzer, supra, at 408. Not surprisingly, courts have been hesitant to reach this conclusion, probably because "[i]t is the 'cardinal principle of statutory construction' . . . [that] it is our duty 'to give effect, if possible, to every clause and word of a statute' . . . rather than to emasculate an entire section." Bennett v. Spear, 520 U.S. 154, 173 (1997) (quoting United States v. Menasche, 348 U.S. 528, 538 (1955)). However, "[t]he canon requiring a court to give effect to each word 'if possible' is sometimes offset by the canon that permits a court to reject words 'as surplusage' if 'inadvertently inserted or if repugnant to the rest of the statute.'" Chickasaw Nation v. United States, 534 U.S. 84, 94 (2001) (internal citation omitted). Importantly, the canons "are not mandatory rules . . . [a]nd other circumstances evidencing congressional intent can overcome their force." Id. While there is contextual support for determining the phrase "with respect to the debtor" adds no additional meaning to § 362(c)(3)(A),[12] there do not appear to be any jurisdictions that have adopted this reading.

A third alternative rendition – and the one underlying the Minority Approach – reads the phrase "as referring to the serially-filing spouse, making that debtor subject to collection actions, both in personam and in rem (against estate and non-estate property), while leaving the stay completely in effect as to the newly-filing spouse's person and property." In re Daniel, 404 B.R. 318, 326 (Bankr. N.D. Ill. 2009). Reading "with respect to the debtor" as "distinguishing between a debtor and the debtor's spouse is entirely consistent with the references to 'a single or joint case' at the beginning of section 362(c)(3) ... [and] is consistent with other provisions of the bankruptcy code."[13] In re Reswick, 446 B.R. 362, 370 (9th Cir. B.A.P. 2011).

### (2) THE CONTEXT OF § 362(c)(3)(A)

As the Sixth Circuit observed in evaluating a different BAPCPA provision, the initial step of examining the plain language of the Controlling Statute "does not end our inquiry" because "the plain-language arguments supporting each approach are nearly in equipoise[.]" Baud v. Carroll, 634 F.3d 327, 351 (6th Cir. 2011). Thus we turn to the second step, considering the Controlling Statute in context with the rest of § 362(c), other BAPCPA provisions, and the Bankruptcy Code writ large, see, e.g., Milavetz, Gallop & Milavetz, P.A. v. United States, 559 U.S. 229, 244 (2010).

---

[12] See Meltzer, supra, at 408–09 ("[T]he phrases 'with respect to the debtor' and 'with respect to a debtor' do not appear at all in the pre-BAPCPA Bankruptcy Code but appear 17 times in BAPCPA and, excluding § 362(c)(3)(A) itself, in every one of the other instances where the phrases appear as a stand-alone clause, they add nothing at all to the sections in question.").

[13] "[S]everal provisions regarding joint cases added to the Code by BAPCPA distinguish between 'the debtor' and 'the debtor's spouse.'" In re Daniel, 404 B.R. 318, 326 (Bankr. N.D. Ill. 2009) (citing §§ 101(10A), 707(b)(7), and 1325(b)).

This Court assesses, first, the contextual landscape in which the Controlling Statute is located, and whether that context lends support to the Majority Approach. The Majority Approach's interpretation of "with respect to the debtor" renders the Controlling Statute "internally inconsistent" because "the opening clause … would be surplusage." In re Reswick, 446 B.R. 362, 368 (9th Cir. B.A.P. 2011). The Majority Approach also "requires one to read into the statute words that are not there . . . [by] expand[ing] the phrase 'with respect to the debtor' to say 'with respect to the debtor and the debtor's property[,]'" In re Bender, 562 B.R. 578, 583–84 (Bankr. E.D.N.Y. 2016), which "somewhat undermines the persuasiveness of their 'plain language' argument." In re Reswick, 446 B.R. at 369. See also In re Johns, No. 08-24311, at 3 (Bankr. E.D. Wis. July 11, 2008) ("It is unclear to this Court why the majority finds it clear that the phrase 'with respect to the debtor' should be read to mean 'with respect to the property of the debtor,' when that is not what the statute says.") (emphasis original). The Majority Approach also creates an inconsistency with § 362(j), which provides a procedure by which a party in interest may confirm, "that the automatic stay has been terminated" pursuant to § 362(c). "If § 362(c)(3)(A) did not terminate the stay in its entirety, § 362(j) would be rendered inconsistent 'because § 362(j) does not carve out exceptions for property that remains protected by the stay but broadly and summarily allows parties to confirm that the stay has been terminated under § 362(c).'" In re Curry, 362 B.R. 394, 402 (Bankr. N.D. Ill. 2007) (quoting In re Jupiter, 344 B.R. 754, 760 (Bankr. D.S.C. 2006)). See In re Reswick, 446 B.R. at 369 n. 7.

This Court turns next to the Minority Approach, which reads the Controlling Statute to terminate the stay in its entirety as to only the repeat-filing spouse in a joint case. This construction raises some contextual conundrums. First, use of a singular term in the Bankruptcy Code generally includes the plural of the same term, see § 102(7). If we apply this rule of construction to the Controlling Statute, it "would yield the conclusion that the stay terminates as to both debtors in a joint case, even if one of the debtors did not have a prior case dismissed within the prior year … [and then] there would be no reason for Congress to have used the phrase 'with respect to the debtor' to differentiate between the debtors in a joint case." In re Smith, 573 B.R. 298, 302 n. 2 (Bankr. D. Me. 2017). This is not a fatal flaw, however, since this potential clash with § 102(7) is present in other parts of the Bankruptcy Code. Id. (citing § 101(10A)). Second, this Court agrees that while the Minority Approach's distinction between co-debtor spouses "does not comport perfectly with the rule of construction in § 102(7), it is preferable to the majority interpretation, which suffers from more serious defects." Id. at 302 n. 2. Thus it is "the most plausible [interpretation] in the context of the language of § 362 and of the Bankruptcy Code as a whole." In re Daniel, 404 B.R. 318, 327 (Bankr. N.D. Ill. 2009).

14

### (3) THE CONGRESSIONAL PURPOSE BEHIND § 362(c)(3)(A)

As the Supreme Court instructed in the BAPCPA Cases, this Court will consider next which interpretation is most reflective of congressional purpose. See Milavetz, Gallop & Milavetz, P.A. v. United States, 559 U.S. 229, 231–32, 244 (2010); Ransom v. FIA Card Servs., N.A., 562 U.S. 61, 64, 71 (2011).

BAPCPA added new subsections to § 362(c) expressly to address the duration and termination of the automatic stay. Subsections 362(c)(3) and (4) apply when an individual has multiple bankruptcy filings within a one-year period. The specific provision at issue here, § 362(c)(3)(A), limits the duration of the stay to 30 days if the individual debtor had a prior case pending within the one-year period preceding the current filing. Subsections 362(c)(3)(B) and (C) provide the means by which a party in interest can move to continue the stay beyond the 30-day deadline upon a showing that "the filing of the later case is in good faith as to the creditors to be stayed." § 362(c)(3)(B). If a debtor had two cases pending within the preceding one-year period, § 362(c)(4)(A) mandates that the automatic stay "shall not go into effect" upon the filing of the later case. In that circumstance the debtor will enjoy the benefits of the stay only if he or she can demonstrate the later case was filed in good faith as to the creditors to be stayed. Based upon this surrounding "statutory context," there is a solid basis for finding Congress enacted the Controlling Statute to limit the extent of protection afforded by the automatic stay to debtors who filed multiple bankruptcy cases within a one-year period. The BAPCPA Cases reach the same conclusion. In Milavetz, the Court declared, "Congress enacted [BAPCPA] to correct perceived abuses of the bankruptcy system." 559 U.S. at 231–32. The desire to limit protection to repeat-filers aligns with other BAPCPA provisions intended to "correct perceived abuses of the bankruptcy system." Id. See §§ 707(b)(2), 522(p)(1), 522(b)(3)(A).

In Ransom, the Supreme Court specifically referred to the 2005 House Judiciary Report to ascertain the congressional purpose underlying the means test, and found that Congress "designed the means test to 'ensure that [debtors] repay creditors the maximum they can afford.'" Ransom, 562 U.S. at 64. In the section-by-section description of the 2005 House Report, the proposed changes to § 362(c), including what would become the Controlling Statute, are in "Title III," entitled "Discouraging Bankruptcy Abuse." See H.R. Rep. No. 109-31, pt. 1, p. 69 (2005). The proposed change embodied in the Controlling Statute is labelled "Sec. 302. Discouraging Bad Faith Repeat Filings." Id. As further evidenced by the statutory context, the 2005 Report demonstrates that the Controlling Statute was emblematic of Congress's intention to "correct perceived abuses of the bankruptcy system." Milavetz, 559 U.S. at 231–32.

The Minority Approach is consistent with congressional intent behind the Controlling Statute since its interpretation of the statute meaningfully penalizes a debtor who files multiple bankruptcy cases within a year and fails to show a good faith basis for doing so. In re Jupiter, 344 B.R. 754, 761 (Bankr. D.S.C. 2006). This analysis affords the repeat-filing debtor a 30-day breathing period, and the opportunity to extend the automatic stay through § 362(c)(3)(B), but protects creditors by terminating the stay after that initial 30-day period if the debtor cannot demonstrate the recent filing was in good faith. This outcome better "advances BAPCPA's objectives" by serving as a significant deterrent to bad-faith repeat filers. See Ransom v. FIA Card Servs., N.A., 562 U.S. 61, 71 (2011) (finding the government's interpretation "advances BAPCPA's objectives.")

By contrast, the Majority Approach would have scant practical effect in deterring repeat filings. Under its interpretation, in a chapter 13 case, a creditor benefiting from the termination of the stay would not be able to continue a foreclosure, nor gain access to any property the debtor acquired after the filing of the case, such as postpetition earnings. In re Daniel, 404 B.R. 318, 323 (Bankr. N.D. Ill. 2009). While some courts have found the Majority Approach would still allow creditors to make dunning phone calls, bring eviction actions, and reduce their claims to judgment, see, e.g., In re Jumpp, 356 B.R. 789, 796–97 (1st Cir. B.A.P. 2006), this is, at best, of de minimus value. The reality is that "very few creditors would seek to pursue only the debtor personally, or only property of the debtor." In re Reswick, 446 B.R. 362, 368 (9th Cir. B.A.P. 2011).[14] The Majority Approach also allows debtors who are unable to demonstrate they filed the new case in good faith to nevertheless receive the benefit of the automatic stay. In re Keeler, 561 B.R. 804, 808 (Bankr. N.D. Ga. 2016); see also In re Smith, 573 B.R. 298, 306 (Bankr. D. Me. 2017) ("It makes little sense to conclude that Congress meant to protect most, if not all, of a debtor's property – by virtue of its status as property of the estate – in a case that was, at least presumptively, not filed in good faith."). "Such an interpretation is not consistent with the intent of Congress nor the new statutory scheme set forth in § 362(c)(3)." In re Jupiter, 344 B.R. 754, 761 (Bankr. D.S.C. 2006). The "practical consequences" of adopting the Majority Approach are thus "hard to reconcile with the notion that Congress intended a severe punishment for serial filers." Laura B. Bartell, Staying the Serial Filer – Interpreting the New Exploding Stay Provisions of § 362(c)(3) of the Bankruptcy Code, 82 AM. BANKR. L.J. 201, 226 (2008).

---

[14] In a 2012 analysis of courts adopting the Majority Approach, Peter Meltzer was unable to find "a single case in which a creditor has sought to terminate the automatic stay under § 362(c)(3)(A)," rendering the Controlling Statute in those jurisdictions "invisible because most stay relief motions are seeking relief with respect to property of the estate and not the debtor." Meltzer, supra at 409 n. 7.

Additionally, there are two points of contrast between the Majority Approach to the Controlling Statute and congressional purpose that may produce "senseless results." First, under the Majority Approach, the automatic stay terminates only as to the debtor and the debtor's property – and not as to property of the estate – and thus only the debtor has an incentive to continue the stay. Though subparagraph (c)(3)(B) allows for "a party in interest" to move to continue the stay, the trustee and creditors "would have no reason to seek an extension of the stay simply to prevent assessments of personal liability against the debtor or collection actions against non-estate property that could not benefit them in any event." In re Daniel, 404 B.R. 318, 323 (Bankr. N.D. Ill. 2009). This narrow scope of benefits seems inconsistent with congressional intent and strikes this Court as a serious weakness in the Majority Approach. Second, there is the question of how one can reconcile the Majority Approach with Congress's mandate for an expedited hearing at which debtors must prove they filed their petition in good faith as the sine qua non for continuation of the stay. This Court finds the Jupiter rationale persuasive and "does not believe Congress enacted this section, which both requires an extraordinary amount of work on the part of the moving parties and the courts, only to have no meaningful penalty if the stay is not extended." In re Jupiter, 344 B.R. 754, 761 (Bankr. D.S.C. 2006). The Minority Approach avoids the potentially "senseless results" that may accompany the Majority Approach's interpretation and this Court finds "'no other solution yields as sensible a result.'" Milavetz, Gallop & Milavetz, P.A. v. United States, 559 U.S. 229, 245 (2010) (internal citation omitted).

Because the Controlling Statute's text, context, and purpose support adoption of the Minority Approach, it is not necessary for this Court to revisit the question of whether § 362(c)(3)(A) is ambiguous.[15] Instead, the Court concludes the pertinent legislative history reinforces its revised position, acting as "extra icing on a cake already frosted." Yates v. United States, 135 S. Ct. 1074, 1093 (2015) (Kagan, J., dissenting).

The legislative history[16] underlying § 362(c)(3)(A) "demonstrates that Congress intended to deter successive bankruptcy filings by imposing stricter limitations on the power of the automatic stay as subsequent bankruptcy cases are filed." In re Reswick, 46 B.R. 362, 372 (9th Cir. B.A.P. 2011).

---

[15] Other courts have made a compelling case for doing so. See, e.g., In re Reswick, 446 B.R. 362, 370–71 (9th Cir. B.A.P. 2011).

[16] While, some courts find "Congress did not give the Court the benefit of any legislative history clarifying its intent on this point," In re Moon, 339 B.R. 668, 672 (Bankr. N.D. Ohio 2006), earlier versions of the bill enacted as BAPCPA in 2005 are more than sufficiently similar to warrant consideration as legislative history. "With minor changes, the relevant portions of §§ 362(c)(3) and 362(c)(4) as enacted in 2005 are identical to what was proposed in 1998 and passed by Congress in 2000." Bartell, supra, at 225. See also Conn. Bar Ass'n v. United States, 620 F.3d 81, 97 (2d Cir. 2010) (citing the 2005 House Report as well as testimony from the 1998 congressional committee hearings).

> During the seven years in which a provision for termination of the automatic stay
> 'with respect to the debtor' was pending in Congress, none of the several committee
> reports that discussed the provision ever suggested that the phrase drew a distinction
> between actions against the debtor personally, actions against the debtor's estate
> property, and action's against the debtors' non-estate property.

In re Daniel, 404 B.R. 318, 329 (Bankr. N.D. Ill. 2009). See H.R. Rep. No. 105-540, p. 80 (1998); S. Rep. No. 105-253, p. 39 (1998); H.R. Rep. No. 109-31, pt. 1, p. 69 (2005). As originally proposed on February 3, 1998, section 121 of H.R. 3150, entitled "Discouraging Bad Faith Repeat Filings[,]" did not contain language that would become § 362(c)(3)(4). Therefore, the 1998 hearings held on H.R. 3150 only considered language that would become § 362(c)(3)(A), and none of the witnesses, over the multiple days of testimony and through written statements, expressed an understanding that the stay termination contemplated in section 121 only applied to a debtor and the debtor's non-estate property.[17]

Consequently, and contrary to the Debtor's assertions (doc. # 23, p. 5),[18] "there is no indication in the legislative history that § 362(c)(3) [which applies to repeat-filers who had two cases pending during a one-year period] effects a partial termination of the automatic stay while § 362(c)(4) [which applies to repeat-filers who had three cases pending during a one-year period] terminates the automatic stay in its entirety." In re Curry, 362 B.R. 394, 402 (Bankr. N.D. Ill. 2007).

In sum, after following the guideposts the Supreme Court has planted, and reexamining this question with the benefit of over a decade of experience, scholarly study, and case law, this Court is persuaded the Minority Approach to interpreting the Controlling Statute is the most truly aligned with the congressional goal of deterring successive bankruptcy filings by an individual debtor and should be applied in this district. The Minority Approach meaningfully implements a deterrent to repeat filings by terminating the stay as to all creditors. It prudently balances a potent, across-the-board limitation on the stay when a debtor files a case within one year of having had another bankruptcy case dismissed, on the one hand, with the opportunity for individuals who file in good faith to retain the full impact of the stay even if their life circumstances led them to need a second bite at the bankruptcy apple.

---

[17] See, e.g., Hearings on H.R. 3150 before the Subcommittee on Commercial and Administrative Law of the House Committee on the Judiciary, 105th Cong., 2d Sess., pt. III (1998).

[18] The Debtor argues that if Congress intended the entirety of the stay to terminate under § 362(c)(3)(A), it would have modeled the language "as it did in § 362(c)(4)" (doc. # 23, p. 5). Courts adopting the majority interpretation have used this rationale. See, e.g., In re Jumpp, 356 B.R. 789, 795–96 (1st Cir. B.A.P. 2006); In re Paschal, 337 B.R. 274, 279 (Bankr. E.D.N.C. 2006). However, this argument is not persuasive. While the phrase "with respect to the debtor" appeared in both the original House and Senate bills, "[n]either bill included a provision comparable to § 362(c)(4) ... [t]herefore, there could have been no congressional intent expressed by the failure to make the language in § 362(c)(3) correspond to the language in the yet-to-be-drafted § 362(c)(4)." Bartell, supra, at 224.

### E.  The **Bender** Approach

The Movant asserts, in reliance upon the <u>Bender</u> Approach, that only a creditor who initiated legal action against the debtor before the debtor filed the current bankruptcy case should get the benefit of the statute's early stay termination (doc. # 24, p. 2). The Trustee and Debtor oppose adoption of the <u>Bender</u> Approach, cautioning <u>Bender</u> is just "one [and the only] decision from a bankruptcy court in our Circuit[,]" and  "<u>Bender</u> is simply a further narrowing of the minority position rather than a new interpretation" (doc. ## 25, 23, respectively).

An analysis of the statutory text and, specifically, when, where, and how often the words "action taken" and "act" are used in the Code, leads this Court to disagree with the narrow interpretation of the <u>Bender</u> Approach. Including the Controlling Statute, the words "action taken" are used together four times in the Code,[19] and one can only read two of those usages as limited to a formal action. <u>In re James</u>, 358 B.R. 816, 820 (Bankr. S.D. Ga. 2007). "Section 362(k)(2)[,]" for instance, "uses 'action taken' in limiting awards for stay violations to actual damages when the violation 'is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor.'" Bartell, <u>supra</u>, at 216 (quoting § 362(k)(2)). "This protective provision, enacted at the same time as § 362(c)(3), could not have been meant to shield creditors when they commence litigation or similar proceedings, but not when they take lesser steps in the good faith belief that the stay has terminated under § 362(h)." <u>Id.</u> at 216–17. The <u>Bender</u> Approach is further undercut by the fact that "three provisions of § 362(b) refer to 'any action by' a specified agency or licensing body in a way that must include non-adjudicative acts." Bartell, <u>supra</u>, at 215. <u>See also</u> <u>In re Betty Owen Schools, Inc.</u>, 195 B.R. 23, 27 n. 5 (Bankr. S.D.N.Y. 1996). These contextual considerations persuade the Court to reject the narrow reading of "action taken," which the <u>Bender</u> Approach describes and the Movant promotes.

Additionally, the <u>Bender</u> interpretation does not align as clearly with congressional purpose as the Minority Approach. The Movant's argument that "[t]he <u>Bender</u> court's rationale strikes a balance between the rights of repeat filers and creditors who have already undertaken lawful efforts to collect debts owed to them" (doc. # 24, p. 2) misses the mark. The Movant has failed to show any policy basis for preferring creditors who have initiated judicial, administrative, or other formal proceedings over creditors who have not.

> The Code embodies a principal of equality, treating similarly-situated [sic] creditors similarly. Congress cannot have intended to subvert that principle by giving creditors

---

[19] <u>See</u> §§ 362(c)(3)(A), 362(k)(2) ("if such violation is based on an action taken by an entity"), 507(a)(8) ("collection action taken"), and 524(g)(6) ("does not bar an action taken by or at the direction of an appellate court").

> who had begun actions against the debtor prepetition 'get-out-of-bankruptcy-free'
> cards and forcing others (perhaps less aggressive creditors who tried to keep the
> debtor out of bankruptcy) to abide by the stay.

Bartell, supra, at 218. Moreover, this Court finds nothing in the legislative history to support the Bender view that the Controlling Statute was intended to limit stay termination to formal actions or proceedings. See Eugene R. Wedoff, The Automatic Stay and Serial Filings: How the Courts have Interpreted §§ 362(c)(3) and (4), CONSUMER BANKR. COMM. NEWSLETTER, AM. BANKR. INST. (2006).

For the foregoing reasons, the Court denies the Movant's request to adopt the Bender Approach's interpretation of "action taken."

### F. What Impact Does the Court's New Interpretation of § 362(c)(3)(A) have on this Case?

The Debtor reasonably relied upon the precedent this Court established in McFeeley when he chose not to file a motion to extend the stay, within 30 days of filing this case, pursuant to § 362(c)(3)(B). Therefore, in order to avoid manifest injustice, and pursuant to the scheduling order of January 12, 2018 (doc. # 19), and through the exercise of its powers under § 105, the Court grants the Debtor thirty (30) days from the date of entry of this memorandum of decision to proceed as set out in § 362(c)(3)(B), if he so desires.

## V. CONCLUSION

At the Movant's behest, the Court has considered whether it should reconsider the interpretation of § 362(c)(3)(A) it adopted in In re McFeeley, 362 B.R. 121 (Bankr. D. Vt. 2007), adopt the interpretation set out in the Bender case, and declare that the stay in this case expired, by operation of law, after the case had been pending 30 days. Based upon the foregoing analysis, the Court grants the first element of the Movant's Motion, and both reconsiders and changes its position.

The Court denies the second element of the Movant's Motion, asking that this Court adopt the Bender Approach to § 362(c)(3)(A), because it does not find that interpretation of the Controlling Statute to be consistent with the purpose of the statute, namely, to discourage repeat filings. Instead, the Court adopts the Minority Approach, construing § 362(c)(3)(A) to terminate the stay entirely – i.e., against both the debtor's property and property of the estate, and for all creditors – unless the debtor or another party in interest makes the requisite showing, and court orders otherwise, within 30 days of the date the debtor filed the second case. This interpretation allows for the most straightforward understanding of the text, is consistent with the contextual landscape changes BAPCPA imposed, and coincides most thoroughly with Congress's stated purpose.

The Court defers a determination on the third element of the Movant's Motion, whether the stay expired in this case by operation of law under the Controlling Statute, until the earlier of (i) the expiration of the 30-day period described in § 362(c)(3)(B), or (ii) the hearing held pursuant to that provision, as extended by this decision,

This memorandum constitutes the Court's findings of fact and conclusions of law.

July 20, 2018
Burlington, Vermont

Colleen A. Brown
United States Bankruptcy Judge