UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

Filed & Entered
On Docket
September 24, 2018

_____

**In re:**
    **Robert Goodrich,**                                                         **Chapter 13**
          **Debtor.**                                                                **Case # 17-10500**
_____

*Appearances:*  Rebecca Rice, Esq.                                     Heather Z. Cooper, Esq.
                 Cohen & Rice                                             Facey Goss & McPhee, P.C.
                 Rutland, Vermont                                      Rutland, Vermont
                 For the Debtor                                         For Jennifer Soutar

                 Jan M. Sensenich, Esq.
                 Office of the Chapter 13 Trustee
                 Norwich, Vermont
                 As the Standing Trustee

## MEMORANDUM OF DECISION
### OVERRULING THE CREDITOR'S OBJECTION
### AND GRANTING DEBTOR'S MOTION TO CONTINUE THE AUTOMATIC STAY, WITH CONDITIONS

Within one week of this Court entering a memorandum of decision and order determining the scope of the automatic stay applicable in a repeat filer's bankruptcy case, Robert Goodrich filed a motion to continue the automatic stay in this case (doc. # 40, the "Motion"), under § 362(c)(3)(B) of the Bankruptcy Code.[1] Mr. Goodrich (the "Debtor") had filed this chapter 13 bankruptcy case on November 20, 2017, within one year of the date this Court dismissed his prior chapter 13 case. Since this is his second chapter 13 case pending within one year, he is subject to the restrictions set out in § 362(c)(3)(A), under which the automatic stay in this case would, absent the instant motion, terminate 30 days after the Debtor filed this case. The primary creditor in this case, Jennifer Soutar, filed an objection to the Motion (doc. # 42, the "Objection"). The Court held a hearing on August 17, 2018, and took the matter under advisement.

---

[1] All statutory citations herein refer to Title 11 of the United States Code (the "Bankruptcy Code"), unless otherwise indicated.

1

This is one of three motions a debtor has filed to extend the automatic stay, in this District, since the Court changed its position regarding the scope of stay termination in repeat filer cases, under § 362(c)(3)(A). See In re Goodrich, 587 B.R. 829 (Bankr. D. Vt. 2018). Unlike the other two occasions, where the facts and circumstances weighed decisively for or against the debtor,[2] the Motion and proof in this case present a close call.

Based upon the record in this case, the arguments and testimony presented at the hearing on the Motion, and for the reasons set forth below, the Court overrules Ms. Soutar's Objection, grants the Debtor's Motion for an extension of the stay, and imposes conditions on the extension of the stay, as it applies to creditor Soutar.

## I. JURISDICTION

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered on June 22, 2012. The Court declares the Debtor's Motion, seeking an extension of the automatic stay, constitutes a core proceeding for purposes of 28 U.S.C. § 157(b)(2)(A) and (G), over which this Court has constitutional authority to enter a final judgment.

## II. LEGAL QUESTIONS PRESENTED

This Motion presents five legal issues under the repeat filing statute:

(1) Does § 362(c)(3)(A) apply in this case and trigger a possible termination of the automatic stay, as to all creditors, on the 30th day after the case was filed?

(2) Did the Debtor timely move to extend the stay, and timely present evidence at a hearing, as required by § 362(c)(3)(B)?

(3) Does a presumption arise that the Debtor filed this case not in good faith, under § 362(c)(3)(C)?

(4) If so, has the Debtor rebutted the "not filed in good faith presumption," by clear and convincing evidence, in satisfaction of § 362(c)(3)(C)?

(5) If the Debtor has met that burden of proof and established he filed this case in good faith, what, if any, conditions on the extension of the stay are warranted, under § 362(c)(3)(B)?

## III. FACTUAL BACKGROUND

On August 25, 2000, Jennifer Soutar (the "Creditor") made a loan to the Debtor, secured by a mortgage on the Debtor's real property in Groton, Vermont. On the date he filed the instant bankruptcy case, the Debtor was in default on his payment obligations to the Creditor. See claim # 6-2. The Debtor filed three chapter 13 bankruptcy cases over the past three years and the Creditor has been an active participant in all three cases. The Debtor first filed a petition for relief under chapter 13 of the Bankruptcy

---

[2] See In re Fisher, No. 18-10343 (Bankr. D. Vt. Sept. 14, 2018) (denying motion to extend the automatic stay); In re Gifford, No. 18-10278 (Bankr. D. Vt. Aug. 23, 2018) (granting motion to extend the automatic stay).

Code in June of 2015 (case # 15-10287); the Court dismissed that case, on the Creditor's motion, on September 22, 2015. The Debtor filed his second chapter 13 bankruptcy petition on November 6, 2015 (case # 15-11033); the Court dismissed that case on August 25, 2017, after the Debtor failed to comply with the terms of a conditional order of dismissal, entered after the Creditor filed a motion to dismiss (case # 15-11033, doc. # 31). Following dismissal of the second case, the Creditor commenced a foreclosure action (doc. # 17).[3] On November 23, 2017, approximately three months after the Court dismissed the Debtor's prior case, the Debtor filed the instant chapter 13 case (case # 17-10500).

On December 21, 2017, thirty-one days after the Debtor filed the instant bankruptcy case, the Creditor filed a motion requesting an order confirming the automatic stay had expired (doc. # 13). On January 5, 2018, the Debtor filed a response, acknowledging he had a chapter 13 case pending within the last year and that the automatic stay terminated by operation of law after 30 days, but only to the extent set forth in In re McFeeley, 362 B.R. 121 (Bankr. D. Vt. 2007), i.e. the stay terminated only as to acts against the Debtor or his property (doc. # 16). On January 11, 2018, the Creditor filed a reply, asking the Court to declare the automatic stay in this case does not apply to her claim, to change its interpretation of § 362(c)(3), and to adopt the rationale of In re Bender, 562 B.R. 578 (Bankr. E.D.N.Y. 2016) in construing that statute (doc # 18).

After the parties filed memoranda of law addressing whether there was cause for this Court to reconsider the position it took in McFeeley, and if so, the scope of the automatic stay in this case, the Court took the matter under advisement. On July 20, 2018, the Court entered a memorandum of decision and order, see doc. ## 35, 36, in which it (i) reconsidered the position it took in In re McFeeley; (ii) adopted what is generally referred to as the "minority approach" to interpreting the repeat filer provisions of § 362(c)(3); (iii) determined that under § 362(c)(3)(A), the stay terminates entirely, i.e., against both the debtor's property and property of the estate, and for all creditors, unless the debtor or other party in interest makes the requisite showing, pursuant to § 362(c)(3)(B), and the Court orders otherwise, within 30 days of the date the debtor filed the second case; and (iv) granted the Debtor 30 days, from the date of entry of that order, to file a motion to extend the stay and present his proof, to rebut the presumption this case was not filed in good faith, as described in § 362(c)(3). In re Goodrich, 587 B.R. 829, 849 (Bankr. D. Vt. 2018).

Thereafter, the Debtor timely filed the Motion, the Creditor timely filed her Objection, and the Court held an evidentiary hearing at which only the Debtor testified.[4]

---

[3] All document references pertain to documents filed in case # 17-10500, which is the Debtor's current bankruptcy case, unless otherwise indicated.

[4] The Creditor objected to the Debtor's testifying because the Debtor had not complied with the Local Rules, which require the Debtor to have filed a notice of evidentiary hearing, alerting the Court and parties in interest of the Debtor's intent to present a witness. See Vt. LBR 4001-3(a), 9014-1(b) and LBF Form V. The Court overruled the objection. While the Creditor was

## IV. **DISCUSSION**

Congress added § 362(c)(3) (the "Controlling Statute") to the Bankruptcy Code, to limit the extent of the automatic stay in repeat filer cases, as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 § 302 ("BAPCA"). It reads as follows:

(c)  …
  (3)  if a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b) –
  (A)  the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case;
  (B)  on the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors (<u>subject to such conditions or limitations as the court may then impose</u>) after notice and a hearing completed before the expiration of the 30-day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed. …
  (C)  for purposes of subparagraph (B), a case is presumptively filed not in good faith (<u>but such presumption may be rebutted by clear and convincing evidence to the contrary</u>) -
  (i) as to all creditors, if -
   (I) more than 1 previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was pending within the preceding 1-year period;
   (II) a previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was dismissed within such 1-year period, after the debtor failed to-
    (aa) file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be a substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney);
    (bb) provide adequate protection as ordered by the court; or
    (cc) perform the terms of a plan confirmed by the court; or
   (III) there has not been a substantial change in the financial or

---

correct that the Debtor had failed to comply with the Local Rules, the Court found the following factors weighed in favor of waiving that requirement and permitting the Debtor to present testimony: (1) this interpretation of § 362(c)(3) had been adopted – and thus put in place a new procedure – less than one month earlier; (2) the Debtor had both the burden of meeting the statutorily imposed 30-day deadline and preparing a witness to meet a standard that was not yet tested in this District; and (3) there was little likelihood of surprise to the Creditor as the statute clearly identifies the scope and necessity of proof the Debtor must present to rebut the presumption established by § 362(c)(3)(C). In the absence of these particular factors, the Court would likely have sustained the Creditor's objection on due process grounds.

4

>>> personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later case will be concluded -
>>>> (aa) if a case under chapter 7, with a discharge; or
>>>> (bb) if a case under chapter 11 or 13, with a confirmed plan that will be fully performed; and
>>> (ii) as to any creditor that commenced an action under subsection (d) in a previous case in which the individual was a debtor if, as of the date of dismissal of such case, that action was still pending or had been resolved by terminating, conditioning, or limiting the stay as to actions of such creditor; and

11 U.S.C. § 362(c)(3) (2018) (emphasis added).

Though awkwardly drafted, this statute imposes five new, distinct, and tiered inquiries in repeat filer cases. The first is whether the stay terminates on the 30th day after the most recent case was filed, under § 362(c)(3)(A). If so, the second inquiry is whether the debtor has satisfied the procedural requirements for an extension of the stay, under § 362(c)(3)(B). The third inquiry is whether the presumption arises that the debtor filed the instant case not in good faith, as described in subsection (3)(C). If so, the fourth inquiry is whether the debtor has rebutted the presumption, by clear and convincing evidence, as required by § 362(c)(3)(C). If the debtor rebuts the presumption, establishing the right to an extension of the stay, the fifth and final inquiry is whether there are grounds warranting the imposition of conditions or limitations on the extension of the (otherwise terminated) stay, pursuant to § 362(c)(3)(B).

The Court will consider the five legal issues identified above, which flow directly from these statutory inquiries, in the context of the facts and circumstances of this case.

### 1. Is this Case Subject to the § 362(c)(3) Stay Termination Provision?

The dismissal of an individual's bankruptcy case, other than dismissal under § 707(b), followed by that individual's filing of a new petition under chapter 7, 11, or 13, within a one-year period, opens the door to a termination of the automatic stay, in the later case, on the 30th day after the debtor filed that case. See § 362(c)(3)(A). That early stay termination provision is triggered whenever the earlier of the two cases was dismissed, regardless of why it was dismissed. See, e.g., In re Daniel, 404 B.R. 318, 326 (Bankr. N.D. Ill. 2009) (prior case dismissed for not making mortgage payments required by the plan); In re Charles, 334 B.R. 207, 213 (Bankr. S.D. Tex. 2005) (debtor voluntarily dismissed her prior case); In re Montoya, 333 B.R. 449, 452 (Bankr. D. Utah 2005) (prior case dismissed for failure to make plan payments).

The Debtor filed the instant bankruptcy case on November 23, 2017, approximately three months after the Court dismissed his prior case. Since this is the second bankruptcy case the Debtor has had

5

pending within a one-year period, and the prior case was dismissed, the automatic stay was susceptible to termination on the 30th day after the Debtor filed this case, by operation of law, under § 362(c)(3)(A). The Debtor concedes the § 362(c)(3)(A) stay termination provision applies in this case. See doc. # 16.

The automatic stay in this case would have terminated 30 days after the Debtor filed this case, unless he timely and fully satisfied the requirements set out in the Controlling Statute to avoid that result, starting with the timely filing of a motion, and timely presentation of evidence, to demonstrate his right to an extension of the stay. See § 362(c)(3)(B).

2. **Did the Debtor Timely Move to Extend the Stay, and Timely Present Evidence at a Hearing, As Required by § 362(c)(3)(B)?**

In its July 20, 2018 memorandum of decision and order, the Court reconsidered its prior interpretation of § 362(c)(3), as stated in In re McFeeley, 362 B.R. 121 (Bankr. D. Vt. 2007), and adopted what is generally referred to as the "minority approach" to the Controlling Statute. See In re Goodrich, 587 B.R. 829 (Bankr. D. Vt. 2018). Under this interpretation of this repeat filer statute, the automatic stay terminates entirely, against both a debtor's property and property of the estate, and as to all creditors, unless the debtor or other party in interest makes the requisite showing, pursuant to § 362(c)(3)(B), and a court orders otherwise, within 30 days of the date the debtor filed the second case. Id. at 849. To extend the stay, debtors must both file the motion and notice of hearing, and present their evidence at a hearing, within 30 days of the date they filed the later, i.e., current, case. See In re McFeeley, 362 B.R. at 123–24; Whitaker v. Baxter (In re Whitaker), 341 B.R. 336, 342 (Bankr. S.D. Ga. 2006); In re Ziolkowski, 338 B.R. 543, 545–46 (Bankr. D. Conn. 2006).

Because the Court altered its interpretation of the Controlling Statute, upon which the Debtor had reasonably relied in not seeking to extend the stay under § 362(c)(3)(B) during the first 30 days of this case, the Court granted the Debtor 30 days from the date of entry of its decision, to file a motion to extend the stay and present his proof demonstrating he had filed the current case in good faith as to the creditors to be stayed. In re Goodrich, 587 B.R. at 849. The Debtor timely filed the Motion on July 26, 2018 (doc. # 40), and the Court conducted the hearing on the Motion on August 17, 2018, within the designated 30-day period. Thus, the Debtor satisfied the procedural requirement for extending the stay.

3. **Does the Presumption the Debtor's Current Case is "Filed Not in Good Faith" Apply?**

In evaluating the merits of the Debtor's arguments, and the sufficiency of the Debtor's proof, the Court must first determine whether the statutorily imposed presumption that the Debtor filed the instant case "not in good faith" (the "Presumption") arises. See § 362(c)(3)(C).

Whether this case was presumptively not filed in good faith is crucial because it determines the burden the Debtor must meet to prevail on his motion to extend the stay. COLLIER ON BANKRUPTCY ¶ 362.06(3)(b). If the Presumption arises, the Debtor must rebut the Presumption with "clear and

6

convincing evidence." See § 362(c)(3)(C); see also Fed. R. Evid. 301 ("In a civil case, unless a federal statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption."). If the Presumption does not arise, the Debtor "need only show that the current case was filed in good faith under the less demanding preponderance of the evidence standard." COLLIER ON BANKRUPTCY ¶ 362.06(3)(b); see also In re Pence, 469 B.R. 643, 646 (Bankr. W.D. Va. 2012); In re Thomas, 352 B.R. 751, 754 (Bankr. D.S.C. 2006).

The Presumption arises as to all creditors, under subparagraph (C)(i) of the Controlling Statute, if (I) the debtor had more than one previous case pending within the preceding one-year period; (II) the debtor's previous case was dismissed because the debtor failed to file or amend the petition or other required documents without substantial excuse, failed to provide adequate protection ordered by the court, or failed to perform the terms of a confirmed plan; or (III) there has not been a substantial change in the debtor's financial or personal affairs since dismissal of the last bankruptcy case. See § 362(c)(3)(C)(i).

The record in this case reveals the Debtor's prior case was dismissed because the Debtor failed to comply with the confirmed plan,[5] as evidenced by his failure to fulfill the conditions set out in the conditional order of dismissal (doc. # 51). Specifically, the Court dismissed the Debtor's prior case because the Debtor failed to become and remain current on his real estate taxes post-petition, a requirement of his confirmed plan (case # 15-11033, doc. # 23, p. 3). Therefore, the Presumption imposed under § 362(c)(3)(C)(i)(II)(cc) arises in this case. See also In re Havner, 336 B.R. 98, 103 (Bankr. M.D.N.C. 2006) (finding the presumption arises as to all creditors as "the Debtor failed to comply with his confirmed plan").

The Creditor asserts the Presumption also arises in this case because there has not been a "substantial change in the financial or personal affairs of the debtor since the dismissal of [his] most previous case," under § 362(c)(3)(C)(i)(III) (doc. # 42, p. 5). However, the Court need not address that aspect of the Objection since the Court has already found the Presumption applies because the Debtor's prior case was dismissed for failure to perform the terms of a confirmed plan. See § 362(c)(3)(C)(II)(cc).

Since the Presumption applies, the Court will adjudicate the Debtor's Motion, starting with the rebuttable Presumption the Debtor filed this case "not in good faith," by clear and convincing evidence.

### 4. Did the Debtor Rebut the "Not Filed in Good Faith" Presumption By Clear and Convincing Evidence?

This prong of the inquiry has several facets: how one defines "good faith" for purposes of the Controlling Statute, how one measures good faith to determine whether the Debtor filed the case not in good faith, and how one establishes good faith by clear and convincing evidence.

---

[5] See footnote 9, infra.

7

"The Bankruptcy Code does not define 'good faith' for purposes of extending the automatic stay…[and] no perfect analytical carryover from another part of the Code exists regarding the good faith inquiry to be undertaken in section 362(c)(3)(B) cases." In re Carr, 344 B.R. 776, 780–81 (Bankr. N.D.W. Va. 2006); see also In re Baldassaro, 338 B.R. 178, 187 (Bankr. D.N.H. 2006). Like many other courts, this Court finds it most appropriate to apply a totality of circumstances analysis to determine whether a repeat filer filed their most recent bankruptcy case not in good faith. See § 362(c)(3)(B); see also In re Gibas, 543 B.R. 570, 596–97 (Bankr. E.D. Wis. 2016); In re Carr, 344 B.R. 776, 781 (Bankr. N.D.W. Va. 2006); In re Baldassaro, 338 B.R. 178, 188 (Bankr. D.N.H. 2006); In re Galanis, 334 B.R. 685, 693 (Bankr. D. Utah 2005). A totality of the circumstances analysis seems apt, since that is the same analysis this Court has applied in ruling on objections to confirmation and on motions to dismiss the case, i.e., other prayers for relief based on a debtor's alleged lack of good faith or actual bad faith. See, e.g., In re Hutchins, 400 B.R. 403, 412–13 (Bankr. D. Vt. 2009) (using totality of the circumstances analysis to determine whether the debtor filed his plan in good faith); In re Edwards, 2004 Bankr. LEXIS 2699, *25 (Bankr. D. Vt. 2004) (finding § 1325(a)(3) "expressly requires a finding of good faith and that such a finding is based on the totality of the circumstances, determined on a case-by-case basis" in the context of plan confirmation); Suggitt v. French (In re French), 2003 Bankr. LEXIS 908, ** 16–17 (Bankr. D. Vt. 2003) (holding "[l]ike good faith, an assessment of bad faith is based on the totality of the circumstances" when assessing objections to confirmation and motions to dismiss a chapter 13 case). This mirrors the rationale of many bankruptcy courts, which borrow and adapt the multi-factor tests they employ in the good faith determination for confirmation of a chapter 13 case under § 1325(a), or in a motion to dismiss an individual's case for cause under §§ 1307(c), 1112(b)(1), or 707(a). See Laura B. Bartell, Stay Imposed – The Failed Policy of Section 362(c)(4), 89 AM. BANKR. L.J. 165, 177–81 (2015) (listing cases).

Of the various multi-factor tests for extending the stay, the most frequently employed is the seven-factor test that was established in In re Galanis, 334 B.R. 685, 692 (Bankr. D. Utah 2005). Some courts have varied slightly, or supplemented, this test based upon the facts of the case. See e.g., In re Hart, 2012 WL 6644703, * 3 (Bankr. D. Idaho 2012); In re Thompson, 2010 WL 4928897, * 2 (Bankr. D. Colo. 2010); In re Barrows, 2008 Bankr. LEXIS 4600 (Bankr. N.D.N.Y. 2008); In re Marcello, 2008 WL 821542, ** 2–3 (Bankr. N.D.N.Y. 2008); In re Levens, 2007 WL 609844, * 4 (Bankr. W.D. Mo. 2007); In re Carr, 344 B.R. 776, 781 (Bankr. N.D.W. Va. 2006).[6]

---

[6] The Galanis factors include (1) the timing of the new petition; (2) how the debt(s) arose; (3) the debtor's motive in filing another petition; (4) how the debtor's actions affected creditors; (5) why the debtor's prior case(s) were dismissed; (6) the likelihood that the debtor will have a steady income throughout the bankruptcy case, and will be able to fund a plan; and (7) whether the trustee or creditors object to the motion. See In re Galanis, 334 B.R. 685, 692 (Bankr. D. Utah 2005).

While the Galanis factors are useful, they do not constitute "a one size fits all" set of criteria, and the court must tailor use of the factors to the facts and circumstances of each case. As the Montoya court pointed out, the factors "are not necessarily weighted, nor are they exhaustive … and different weight may be given to different factors in making a final conclusion based upon the totality of the circumstances [in each case]." In re Montoya, 333 B.R. 449, 458, 460 (Bankr. D. Utah 2005). This Court, to the extent it applies particular factors, will consider "how the factors operate together in order to determine the existence of good faith." In re Charles, 334 B.R. 207, 217–18 (Bankr. S.D. Tex. 2005). The great value of the multi-factor tests, notwithstanding the minor variations among them, is they "ultimately reduce to the handy 'totality of circumstances' rubric, by which the court looks at the whole picture and proceeds from there." In re Sarafoglou, 345 B.R. 19, 24 (Bankr. D. Mass. 2006). This Court concurs with the approach expressed in In re Ferguson, 376 B.R. 109 (Bankr. E.D. Pa. 2007), and does not "consider it necessary to evaluate each and every factor that has been considered by a court in a reported decision[,]" and instead "refer[s] to the checklists as a guide," considering "those factors that are most relevant to the circumstances of the particular case at hand." Id. at 125.

An assessment of the Debtor's good faith, or lack thereof, in his filing of the current case is holistic, and "not just an arithmetic exercise." In re Montoya, 333 B.R. at 460. The "bottom line remains whether the debtor is attempting to thwart his creditors or whether he is making an honest effort to repay them to the best of his ability." In re Baldassaro, 338 B.R. 178, 188 (Bankr. D.N.H. 2006). As one court astutely described it, to reach a finding of good faith, the Court needs to determine the current filing "does not violate the spirit of the Bankruptcy Code[,]" is not a "ploy to frustrate creditors[,]" and "represent[s] a sincere effort on the part of the debtor to advance the goals and purposes of Chapter 13." In re Taylor, 2007 Bankr. LEXIS 1505, *7 (Bankr. E.D. Va. 2007).

The Court will examine the circumstances underlying the Debtor's current bankruptcy case, including if and how they differ from the circumstances of his prior case, as well as the arguments and testimony the Debtor presented at the hearing on the Motion, and the content of the Objection, against the factors it finds most relevant to assess whether, under the totality of circumstances, the Debtor has met his burden of showing, by clear and convincing proof, that he filed this case in good faith. The six non-exclusive factors the Court finds most probative in this case are:

(i) whether the Debtor's present case has a reasonable probability of success;
(ii) why the Debtor's prior case was dismissed;
(iii) what motivated the Debtor to file the instant case;
(iv) how the Debtor's current filing affected creditors, and the nature and extent of prejudice to any creditor(s) the Debtor seeks to stay;
(v) whether the trustee or any creditor has objected to continuation of the stay; and

    (vi) whether the Debtor has failed to comply with the obligations imposed by the Bankruptcy Code or is attempting to manipulate the bankruptcy system.[7]

The Controlling Statute explicitly requires the Debtor to rebut the "not in good faith" Presumption with clear and convincing evidence. In this case, whether the Debtor met that burden is a close call. To prove something by clear and convincing evidence is to meet a standard "somewhere below 'beyond a reasonable doubt' and somewhere above a preponderance." In re Baldassaro, 338 B.R. 178, 188 (Bankr. D.N.H. 2006). "The Supreme Court has defined 'clear and convincing' evidence as that which gives the finder of fact 'an abiding conviction that the truth of [the proponent's] factual contentions [is] highly probable.'" Astra Aktiebolag v. Andrx Pharms., 222 F. Supp. 2d 423, 562 (S.D.N.Y. 2002) (citing Colorado v. New Mexico, 467 U.S. 310, 316 (1983)). "In order to prevail [on a § 362(c)(3)(B) motion] the movant, given the heightened standard of proof [with the existence of the presumption], must do more than merely tip the scales in his favor … [he] must produce evidence sufficient to tilt the balance decidedly in his favor." In re Thomas, 352 B.R. 751, 754 (Bankr. D.S.C. 2006).

When the Presumption applies, as it does here, "it is as though evidence has already been provided, establishing that the case was not filed in good faith." In re Montoya, 333 B.R. 449, 457 (Bankr. D. Utah 2005). The magnitude of this evidentiary challenge cannot be understated. "If no further evidence is presented by the Debtor, the only evidence the Court has is the presumption." Id.; see also In re Thomas, 352 B.R. at 754 ("The existence of a presumption means that if the movant comes forward with no evidence, the motion to extend must be denied."). To prevail, the Debtor must "present highly probable evidence of his good faith." In re Taylor, 2007 Bankr. LEXIS 1505, * 5 (Bankr. E.D. Va. 2007); see also In re Ferguson, 376 B.R. 109, 119 (Bankr. E.D. Pa. 2007) ("Clear and convincing evidence is evidence that produces in the mind of the trier of fact an abiding conviction that the truth of the factual contentions is highly probable.").

The Debtor presented the following evidence to rebut the Presumption and extend the stay: the petition and schedules he filed in this case, the current chapter 13 plan, and his testimony at the hearing held on August 17, 2018, which touched upon the circumstances surrounding the filing and dismissal of his last chapter 13 case and the filing of his current bankruptcy case. The Court will assess the import of the Debtor's evidence through the lens of each of the six pertinent factors, to determine if, taken together, the totality of circumstances show the Debtor's filing of this case "does not violate the spirit of the Bankruptcy Code[,]" is not a "ploy to frustrate creditors[,]" and "represent[s] a sincere effort on the part

---

[7] Courts in other jurisdictions have considered additional or alternative factors. These include what, if anything, has changed between dismissal of the prior case and commencement of the current case, see, e.g. In re Carr, 344 B.R. 776, 781 (Bankr. N.D.W. Va. 2006), how the particular debts in the case arose and whether they are for necessities or luxuries, see, e.g. id., and whether the debtor made 'eve of bankruptcy' purchases, see In re Collins, 335 B.R. 646, 652 (Bankr. S.D. Tex. 2005). The Court finds the first of these factors is encompassed by the factors this Court employs here and the latter two are inapplicable.

10

of the debtor to advance the goals and purposes of Chapter 13." In re Taylor, 2007 Bankr. LEXIS 1505, *7 (Bankr. E.D. Va. 2007).

*(i) Does the Debtor's Current Case Have a Reasonable Probability of Success?*

At least one court has identified the probability of success in the current case as the "most important[]" factor, and imposing upon the Debtor the obligation to show he has "sufficient income after expenses to fund [his] proposed plan." In re Carr, 344 B.R. 776, 781 (Bankr. N.D.W. Va. 2006). Additionally, the Debtor must demonstrate "an ability to make the [plan] payments," In re Sawyer, 2007 WL 4125411, *3 (Bankr. E.D. Va. 2007), and an ability to "properly fund and maintain a chapter 13 plan." In re Galanis, 334 B.R. 685, 698 (Bankr. D. Utah 2005). Each of these considerations is germane here.

The Debtor's schedules (doc. #1) state he has a monthly net income of $2,996, sufficient to make the monthly payment of $2,863 required by his proposed chapter 13 plan (doc. # 4). This is a higher monthly income, and a higher monthly plan payment, than the Debtor had when he filed his prior chapter 13 case (case # 15-11033, doc. ## 1, 5, 16, 17). The Debtor testified at the hearing on the Motion that his income has increased since the dismissal of his previous bankruptcy case, he has sufficient income to make his plan payments in the instant case, is current on his plan payments at this time, and will be able meet the plan and tax payment obligations going forward (audio available at doc. # 43).

The Debtor's schedules also reflect a higher amount of tax liability than in his previous case. In his 2015 case, the Debtor scheduled debts of $7,549 to the Town of Barre and $3,000 to the Town of Groton (case # 15-11033, doc. # 1). In the current case, the Debtor lists a debt of $14,676 to the Town of Barre, a debt of $7,287 to the Town of Groton, as well as tax obligations of $3,805 to the State of Vermont and $3,602 to the Internal Revenue Service (doc. # 1). The increased tax liability is cause for concern, but they are included in the Debtor's plan, and the Debtor has both testified to and, through his performance in the current case, demonstrated an ability to make plan payments.[8]

Based on this record the first factor weighs in favor of the Debtor.

*(ii) Why Was the Debtor's Prior Case Dismissed?*

Second, the Court must measure the gravity of the misconduct underlying dismissal of the Debtor's prior case and weigh it against the impact of terminating the automatic stay, as to all creditors, in

---

[8] As indicated above, the question of whether Debtor met his burden of proof in this case is a close one. The Debtor's proof with respect to this factor illustrates the point. While the Debtor did refer to the schedules and plans filed in the two subject chapter 13 cases, he did not avail himself of the opportunity he had at the hearing to affirmatively show why this case has a strong probability of success. For example, he did not describe how or why this case is different from the last one, describe the steps he has taken to ensure he will be able to stay current on his post-petition property tax obligations, opt to make payments on post-petition taxes using an electronic or ACH payment arrangement, or articulate objective criteria demonstrating he will have the means and commitment to meet his obligations under the plan for the full repayment period. The Debtor's success with respect to this factor is due primarily to the documentary record.

11

the current case. Courts that consider this factor focus on whether the debtor's prior case was "dismissed for the debtor's attempts to manipulate the system or some other bad conduct." In re Galanis, 334 B.R. 685, 696 (Bankr. D. Utah 2005). The burden is on the Debtor "to offer some reasonable assurance that whatever caused the dismissal of the prior case will not repeat in the current case." In re Carr, 344 B.R. 776, 781 (Bankr. N.D.W. Va. 2006). The Court dismissed the Debtor's 2015 chapter 13 case because the Debtor failed to comply with the general terms of his confirmed plan, and the specific terms of a conditional dismissal order, both of which required the Debtor to stay current on his post-petition property taxes to the Town of Groton (case # 15-11033, doc. ## 23, 51). The Court had entered the conditional dismissal order requiring the Debtor to pay certain property taxes by June 30, 2017 (doc. # 51), in response to the Creditor's motion to dismiss the case based on the Debtor's post-petition default on this obligation, and corresponding default under the confirmed plan (case # 15-11033, doc. # 31).

There is no dispute the Debtor failed to comply with the Court's order requiring payment of post-petition taxes by June 30, 2017. At the hearing on the Motion, the Debtor testified that, during the prior case, he entered into an agreement with the Town of Groton to pay the subject post-petition property taxes by July 31, 2017 (doc. # 43 at 3:48) and mistakenly understood his payment would be timely if he paid it before that deadline, rather than by the June 30th deadline the Court set in the conditional dismissal order. The Court found that testimony credible.[9] The Debtor also testified he paid the subject property taxes, in full, the first week of July, i.e., within one week of the deadline set in the conditional dismissal order (doc. # 43 at 4:39). There is no evidence before the Court that controverts that statement. Finally, and importantly, the Debtor testified he now understands court orders control and he will be able to make all post-petition property tax payments, when due, during the pendency of the current case (doc. # 43). The Court thus finds the Debtor has offered "reasonable assurance" that the cause of dismissal in the prior case "will not repeat in the current case." See In re Carr, 344 B.R. at 781.

While the breach of a court order is always a serious violation, it is not always sufficiently severe to warrant both dismissal of one case and denial of a stay in a subsequent case. The Court found the Debtor's violation of the conditional dismissal order warranted dismissal of the prior case. The Debtor's obligation to pay a certain obligation by a certain date was unequivocal and there is no question he failed to satisfy that obligation. Whether that also warrants denial of the stay in this case is determined under a different set of criteria, i.e., those set out in the Controlling Statute.

---

[9] The Debtor argued in his Motion, and at the hearing, that his failure to make a property tax payment to the Town of Groton was the result of a miscommunication with his counsel. The Court rejects that argument as unpersuasive. The conditional order was clear and the Court is convinced the Debtor understood the duty it imposed on him (though he may later have thought it would be acceptable to pay the sum due a few days late if the Town authorized that date).

The Court must weigh the actual delay or damage caused by the Debtor's failure to comply with this Court's orders against the consequences the Debtor would suffer if the Court denies an extension of the stay in this case. Other courts have addressed whether to terminate the stay under the Controlling Statute based on a debtor's failure to comply with a court order in a prior case. Those courts took into both the nature and extent of the debtor's breaches of duty. For example, in one case, the debtor failed to comply with both state and bankruptcy court orders to produce discovery, respond to deposition questions, produce documents, file a list of creditors, and pay court-ordered sanctions, and the bankruptcy court denied the debtor's motion to extend the stay. In re Young, 2007 Bankr. LEXIS 229, **10–11 (Bankr. S.D. Tex. 2007). By contrast, in the Sarafoglou case, the bankruptcy court granted a stay extension to a debtor whose previous case the court had dismissed due to the debtor's "failure to comply with a court order regarding the delivery of various documents." In re Sarafoglou, 345 B.R. 19, 21 n. 3 (Bankr. D. Mass. 2006). Here, the Debtor missed the deadline to make the required tax payment by no more than a week. The Debtor's violation is more analogous to the debtor's conduct in Sarafoglou than the debtor's repeated and more aggressive violations of court orders present in the Young case.[10]

If the Court denies the Debtor's motion to continue the stay as to all creditors, the Debtor will, in effect, be denied relief under chapter 13. While the Court considers any violation of a court order to be serious, the Debtor's breach in this case was one of delay rather than abrogation and appears to have had no actual negative impact on any party. The consequences termination of the stay will have on the Debtor in this case strike this Court as manifestly disproportionate to the Debtor's dereliction in his prior case.

Hence, the second factor weighs in favor of the Debtor.

### (iii) *What Motivated the Debtor to File the Current Bankruptcy Case?*

It is also critical for the Court to consider what evidence the Debtor has presented to illustrate why he filed the current case. As one court observed, "[t]his appears to be a somewhat subjective factor[,]" with a particular focus on "whether, from the Debtor's viewpoint, [he] is attempting to eliminate or to satisfy debt, or … attempting to target a specific creditor." In re Montoya, 333 B.R. 449, 459 (Bankr. D. Utah 2005). Though subjective, the Debtor must come forward with evidence to explicate why he filed this case. Id. (finding the debtor's testimony showed a desire to repay creditors rather than to merely eliminate the debt); see also In re Havner, 336 B.R. 98, 103 (Bankr. M.D.N.C. 2006) (finding debtor's motive was to responsibly address his debts "based on the Debtor's testimony"); In re Baldassaro, 338

---

[10] In her motion to dismiss the prior case (case # 15-11033, doc. # 31), the Creditor alleged the Debtor was in arrears on plan payments, in addition to his failure to timely pay property taxes as they became due, as required by the confirmed plan (doc. # 23). However, the chapter 13 trustee contradicted that allegation at the February 2017 hearing. He stated the Debtor was current on plan payments. The docket supports this, showing the trustee never filed a notice of delinquency in that case. Therefore, the Court construes the impact of the Controlling Statute, starting with the premise that the Debtor's prior case was dismissed solely because he failed to comply with the conditional stay relief order and corresponding confirmation order.

13

B.R. 178, 189 (Bankr. D.N.H. 2006) (observing, "[t]he Debtor testified that he filed the chapter 13 petition … to prevent the loss of his home to foreclosure"); In re Galanis, 334 B.R. 685, 696 (Bankr. D. Utah 2005) (finding debtors' motive was to responsibly address their debts "[b]ased on the [debtors'] testimony.").

Here, the Debtor offered no evidence about his motivation for filing the current case through either testimony or affidavit. Moreover, while the Debtor's Motion describes his perspective on why his prior case was dismissed, and offers the conclusory statement that the current case "has been filed in good faith[,]" it includes no explanation at all for why he filed the current case (doc. # 40).

Since the Debtor offered no evidence with respect to this factor, the Presumption controls and the factor weighs against the Debtor.

*(iv) How Did the Debtor's Current Filing Affect Creditors and What is the Nature and Extent of Prejudice to any Creditor(s) the Debtor Seeks to Stay?*

The Court must also take into account how the Debtor's actions affected creditors generally, and the interests of particular and/or moving creditors, In re Galanis, 334 B.R. 685, 696 (Bankr. D. Utah 2005) and, in this case, this factor is as weighty as the Debtor's probability of success. Here, the Court pays particular attention to the Debtor's treatment of the objecting Creditor and the extent to which the Debtor's current filing jeopardizes the Creditor's rights and collateral interest. The Creditor filed a proof of claim asserting a claim for $37,119, secured by a mortgage on the Debtor's Groton property (claim # 6-2). The proof of claim states the collateral securing her $37,119 claim has a value of $200,000 (claim # 6-2; doc. # 1). The Debtor argues, and the Court finds, the Debtor's filing of this case does not put the Creditor's interest at risk, in light of this undisputed equity cushion. See In re Galanis, 334 B.R. at 697; In re Franzese, 2007 Bankr. LEXIS 2490, *7 (Bankr. S.D. Fla. 2007) (finding creditor's objection "severely discount[ed]" where the creditor was "over secured and is proposed to be paid 100% under the Debtor's latest plan."). "Filing for bankruptcy relief will almost always prejudice one's creditors[,]" In re Galanis, 334 B.R. 685, 696 (Bankr. D. Utah 2005), so the fact of prejudice generally, from the filing of the case, is not, in and of itself, enough to demonstrate the Debtor filed this case not in good faith. This is especially so here, where the Creditor will be able to recover her costs and the full arrearage the Debtor owes, if the Debtor completes the plan in the current chapter 13 case.

The Creditor also argues the filing of this case "the day before [the Debtor's] answer to [the Creditor's] Foreclosure Complaint was due to be filed in the Vermont Superior Court … indicates that [this case] was 'filed not in good faith.'" (doc. # 42, p. 2; doc. # 43). As the Debtor correctly contends, the fact that the Debtor's filing thwarted the Creditor's foreclosure action is not determinative of good faith for the purposes of his Motion, because debtors frequently (and not improperly) file for bankruptcy relief on the eve of foreclosure to prevent the loss of their home. See, e.g., In re Ford, 522 B.R. 829 (Bankr.

14

D.S.C. 2014) (extending the automatic stay despite the "close proximity" of the current bankruptcy case filing to the scheduled foreclosure sale); In re Baldassaro, 338 B.R. 178, 189 (Bankr. D.N.H. 2006) (finding, although the debtor filed his case the day before a scheduled foreclosure sale, the timing of the filing actually weighed in the debtor's favor since it was further indication he filed the case to save his home). The existence of a nexus between a foreclosure proceeding and bankruptcy filing is not sufficient to demonstrate a debtor filed the current case in bad faith. Rather, courts must examine the totality of facts and circumstances to determine whether a given debtor "sincerely intend[s] to attempt to implement a financial rehabilitation plan" or instead filed the case "merely to 'stay and delay' an inevitable foreclosure." In re Ferguson, 376 B.R. 109, 124 n. 27 (Bankr. E.D. Pa. 2007) (citing In re Charles, 334 B.R. 207, 219 (Bankr. S.D. Tex. 2005)).

Here, the timing of the Debtor's filing on the eve of a crucial deadline in the foreclosure proceeding is not determinative and the Debtor has established the Creditor's interest is more than adequately protected. Therefore, this factor thus weighs in favor of the Debtor.

*(v)* *Has the Trustee or Any Creditor Objected to Continuation of the Automatic Stay?*

One creditor filed an objection to the Debtor's Motion to extend the stay and the chapter 13 trustee has taken no position on the Motion. While the absence of an objection supports a finding of good faith, see In re Barrows, 2008 Bankr. LEXIS 4600, *11 (Bankr. N.D.N.Y. 2008), In re Carr, 344 B.R. 776, 782 (Bankr. N.D.W. Va. 2006), In re Galanis, 334 B.R. 685, 696 (Bankr. D. Utah 2005), In re Collins, 335 B.R. 646, 653 (Bankr. S.D. Tex. 2005), the fact that a creditor filed an objection does not, ipso facto, shift the balance against the Debtor. Rather, the Court must scrutinize whether and how each objection impacts the viability of the Presumption, in the context of the facts and circumstances of the case. See In re Franzese, 2007 Bankr. LEXIS 2490, *7 (Bankr. S.D. Fla. 2007).

In this case, the Creditor filed a well-researched, articulate, thorough, and pointed objection – notwithstanding the short window of time she had to do so. It is clear the Debtor's three bankruptcy filings have impeded the Creditor's efforts to enforce her rights under the subject note and mortgage, and the Creditor has, consequently, spent a great deal of time and incurred substantial attorney's fees in her litigation against the Debtor in the foreclosure and bankruptcy proceedings. The Creditor alleges the Debtor's past performance compels the conclusion the Debtor did not take seriously the obligations imposed on him by either the note and mortgage, or the confirmation and conditional dismissal orders entered in his chapter 13 cases. The Debtor did not introduce any evidence that contradicted these allegations. The Court gives considerable weight to both the Creditor's arguments in assessing whether the Debtor has rebutted the Presumption and the Debtor's failure to refute those arguments.

15

While not identical, the facts of the instant case are quite similar to the facts presented in the Baldassaro case. There, the court had entered a conditional relief from stay order in favor of the mortgagee in the debtor's first case, the court dismissed that case based on the debtor's failure to comply with the conditional order, the debtor filed a second case on the eve of a foreclosure sale, the debtor filed a motion to extend the stay, the mortgagee was the only creditor to object to that motion, and the trustee took no position on the debtor's motion. In re Baldassaro, 338 B.R. 178, 189 (Bankr. D.N.H. 2006). In weighing the import of the creditor's objection on its analysis of whether the debtor had rebutted the Presumption, that court found it "significant" that the trustee did not object, but ultimately concluded the mortgagee's objection caused this factor to weigh against the Debtor. Id. at 191-192. Its rationale is persuasive.

This Court reaches the same conclusions as the Baldassaro court: It finds, in light of the weight of the Presumption, the strength of the Objection, and the Debtor's failure to refute – or even address – the allegations of the Creditor's objection, this factor weighs against the Debtor.

### (vi) *Has the Debtor Failed to Comply with the Obligations Imposed by the Bankruptcy Code or Attempted to Manipulate the Bankruptcy System?*

The Debtor produced no evidence pertinent to this issue. Thus, the Presumption weighs heavily in the Court's assessment of this factor.

However, the Court may, and did, review the record, including the documents the Debtor filed in each of his chapter 13 cases, as well as the documents he filed in support of the Motion, to make an objective determination of whether the Debtor has attempted to manipulate the bankruptcy system. See In re Carr, 344 B.R. 776, 782 (Bankr. N.D.W. Va. 2006); In re Baldassaro, 338 B.R. at 188. Additionally, neither the Creditor nor trustee has asserted, and the Court's independent review of the record has not revealed, that the Debtor filed inaccurate or misleading documents in any of his bankruptcy cases. This is in contrast, for example to the Gibas case where the court found the debtors did not regard bankruptcy as "serious business[,]" as indicated by a pattern of late-filed, missing, concealed, and inconsistent information. In re Gibas, 543 B.R. 570, 583–84 (Bankr. E.D. Wis. 2016). While the Court's investigation-based conclusion is not inconsequential, it is not sufficient to rebut the Presumption.

After weighing these circumstances, the Court finds the Debtor's failure to produce affirmative evidence on point leaves the Presumption in place, and the objective evidence reveals there is no basis in the record to support a finding against the Debtor. Therefore, the Court characterizes this factor as neutral.

### *Considering the Totality of the Debtor's Evidence, Has the Debtor has Met His Burden of Proof?*

Considering the totality of the circumstances, through the lenses of the six factors this Court has identified, the Court finds three of the factors weigh in favor of granting the Debtor's motion: probability of success in this case, the reason the prior case was dismissed, and the extent of prejudice to the Creditor.

These are the most decisive factors in this case. If the Debtor had not filed a budget showing a reliable source of regular income and sufficient net monthly income to make his plan payment in this case, or if the prior case had been dismissed for more egregious misconduct by the Debtor, or if the evidence did not show the creditors to be stayed had a significant equity cushion, the proof would not be sufficient, under a clear and convincing standard, to demonstrate the Debtor had rebutted the Presumption.

On the record in this case, the Court finds the Debtor has produced sufficient evidence to tilt the balance in his favor. He has persuaded the Court it is more probable the Debtor filed this case in an honest effort to repay his creditors, to the best of his ability, than it is that he filed this case to thwart his creditors. See In re Baldassaro, 338 B.R. 178, 188 (Bankr. D.N.H. 2006). Thus, the Debtor has rebutted the Presumption he filed this case not in good faith, albeit by a narrow margin. Based upon a weighing of the totality of circumstances through these six factors, the Court finds the Debtor is entitled to an extension of the automatic stay as to all creditors.

The Court turns to the final inquiry: whether it should impose limitations or conditions on the extension of the stay.

### 5. Are Conditions on the Extension of the Automatic Stay Warranted?

Once the Debtor rebuts the Presumption imposed by § 362(c)(3)(C), the Court must turn to the question of whether any conditions or limitations should be attached to the extension of the automatic stay. See § 362(c)(3)(B); see also In re Baldassaro, 338 B.R. 178, 192 (Bankr. D.N.H. 2006).

The Court's determination of whether the Controlling Statute applies, whether the Presumption arises, and whether the Debtor has established (by the applicable burden of proof) that he filed his current case in good faith, are inquiries limited to the facts and circumstances underlying only the instant and immediately preceding bankruptcy cases. See, e.g., In re Galanis, 334 B.R. 685, 693 (Bankr. D. Utah 2005) (in assessing debtor's good faith under § 362(c)(3)(B), the court considered why "the debtor's prior case" was dismissed); In re Carr, 344 B.R. 776, 781 (Bankr. N.D.W. Va. 2006) (looking at why "the prior case" was dismissed, what has changed in the time between the dismissal "of the prior case" and the commencement of the current case, and the degree of prejudice suffered by creditors due to the lapse of time between the dismissal "of the prior case" and the filing of the current case).

The Controlling Statute does not require courts to employ that same scope of inquiry in the determination of whether to impose conditions or limitations on the extension of stay. Likewise, there is nothing in the relevant jurisprudence or pertinent legal scholarship that precludes courts from expanding the breadth of facts and circumstances they take into account, with respect to this final question, to include scrutiny of the debtor's conduct in all of the bankruptcy cases the debtor has filed or the history of litigation, if any, between the debtor and objecting creditor. It strikes this Court as appropriate, in this

17

discretionary phase, to look at the full constellation of relevant considerations. This includes the facts and circumstances of all three of the chapter 13 cases the Debtor filed over the last three years; the extensive, adversarial history between the Debtor and Creditor; and the Creditor's well-founded concern that the Debtor may fail to complete his plan (for the third time) in the current bankruptcy case.

The Court acknowledges that the question of whether to impose conditions on an extension of the automatic stay is an equitable one that requires the Court to articulate the fundamental premises that establish the framework for its analysis and then reach a decision based on the most salient facts and circumstances the instant case presents. The two premises that undergird the Court's analysis are: First, the purpose of the Controlling Statute is to deter repeat filers who are acting in bad faith. See Reswick v. Reswick (In re Reswick), 446 B.R. 362, 372 (9th Cir. B.A.P. 2011) (citing In re Curry, 362 B.R. 394, 402 (Bankr. N.D. Ill. 2007)) (observing that Congress added § 362(c)(3) to the Bankruptcy Code under the specific title "Discouraging Bad Faith Repeat Filings."). Second, the purpose of the Bankruptcy Code is to give honest debtors a fresh start and treat creditors fairly. See Schwab v. Reilly, 560 U.S. 770, 791 (2010); Stellwagen v. Clum, 245 U.S. 605, 617 (1918).

The Court identifies the most salient considerations in this inquiry to be the extensive history between these particular parties and the Debtor's performance in prior chapter 13 cases. The history between these parties shows a clear pattern: The Debtor defaults in his obligations under the note and mortgage with the Creditor, the Creditor commences a foreclosure action to enforce her rights, the Debtor responds to that action by filing a chapter 13 bankruptcy case to stop the foreclosure action, and the Creditor files for dismissal of the Debtor's bankruptcy case. In the past two cases, the Creditor was successful in obtaining dismissal of the Debtor's case, and the Debtor then began the pattern anew.

With regard to the Debtor's past performance, the record shows the Debtor failed to fulfill his obligations under chapter 13 in both of his two prior bankruptcy cases.

Therefore, this Court conditions the extension of the automatic stay, as to the Creditor, on the Debtor's continued and consistent payment of the sums due under the confirmed plan and all post-petition obligations which affect the Creditor's collateral interest. Additionally, if the Court dismisses this case, for any reason, the relief from stay the Court grants in this case, in favor of the Creditor, will remain in effect during any subsequent bankruptcy case(s) the Debtor files within one year from the date of dismissal of this case.

Based on the record in this case, and the absence of an objection by any other creditor, the equities do not support the imposition of a filing bar or any other conditions or limitations on the extension of the stay as to other creditors.

## V. CONCLUSION

For the reasons set forth above, the Court finds (1) the early stay termination provision in the Controlling Statute applies in this case; (2) the Debtor has met the procedural requirements of the Controlling Statute by timely filing a motion to extend the stay, and timely presenting evidence at a hearing; (3) the Presumption arose that the Debtor filed this case not in good faith, under § 362(c)(3)(C); and (4) under the totality of the circumstances of this case and the Debtor's most recent prior bankruptcy case (case # 15-11033), the Debtor has demonstrated, with clear and convincing evidence, that he filed the current case in good faith, thereby rebutting the Presumption. Accordingly, the Court overrules the Creditor's Objection to the Debtor's Motion, and determines the Debtor is entitled to an extension of the automatic stay under § 362(c)(3).

The Court further finds, under all of the facts and circumstances of the Debtor's three bankruptcy cases, the Debtor's conduct with respect to the obligations he owes the Creditor, the history of persistent litigation between the Debtor and the Creditor, and the potential risks the extension of the stay poses to the Creditor, that the extension of the stay as to the Creditor is subject to two conditions: First, the Debtor must make all plan payments, all payments due the Creditor, and all payments on other obligations that directly affect the Creditor's rights and collateral interest, in full and on time. Second, if the Court dismisses this case, for any reason, this decision, and the conditional or absolute relief from stay the Court has granted to creditor Soutar in this case will remain in effect through the duration of any bankruptcy case(s) the Debtor files within one year of the date the Court dismisses this case.

Lastly, the Court extends the automatic stay as to all other creditors without condition, pursuant to § 362(c)(3)(B).

This memorandum of decision constitutes the Court's findings of fact and conclusions of law.

September 24, 2018  
Burlington, Vermont

Colleen A. Brown  
United States Bankruptcy Judge